ALFRED C. SMITH *v.* THE CHESAPEAKE AND OHIO
RAILROAD COMPANY.

[No. 3-1272A102. Filed May 30, 1974. Rehearing denied July 2, 1974. Transfer denied November 12, 1974.]

*Robert D. Hawk, Robert P. Kennedy, Spangler, Jennings, Spangler and Dougherty,* of counsel, of Gary, for appellant.

*Russel J. Wildman,* of Peru, for appellee.

LYBROOK, J.—The sole issue in this appeal is whether the trial court erred in granting defendant appellee's motion for judgment on the evidence in plaintiff-appellant's action to recover damages for personal injuries sustained in a collision between a train and a tractor trailer unit.

The collision in question occurred on January 28, 1966, where the tracks of defendant-appellee Chesapeake and Ohio Railroad Company cross highway U.S. 30 near Hanna, Indiana in LaPorte County. The highway is a divided four lane road, and the crossing is protected by warning flashers.

The truck approached the crossing from a westerly direction, travelling approximately 40 to 50 miles per hour. De-

fendant's train approached the crossing from a southerly direction. Having previously completed a switching movement south of the crossing, it was accelerating and had reached a speed estimated at 10 to 18 miles per hour at the time of impact.

The truck left the highway 151 feet west of the crossing and the point of impact occurred 20 feet south of the east-bound lanes of the highway. The truck struck the train's first box car, which was preceded by two engine units. Apparently, neither the truck nor the train braked or slowed prior to impact.

Plaintiff-appellant Smith, a passenger in the cab of the truck, was sleeping at the time of the collision. The driver of the truck died from injuries sustained in the collision.

## I.

Initially, appellee argues that this cause should be affirmed due to alleged defects in appellant's brief and the record of the proceedings.

Appellee first submits that the record of the proceedings is inadequate since appellant's Motion to Correct Errors is not separately certified. However, appellee's reliance upon *Thonert* v. *Daenell* (1970), 148 Ind. App. 70, 263 N.E.2d 749, in support of this proposition is misplaced. In *State Board of Tax Commissioners* v. *Associated Auto & Truck Rental, Inc.* (1971), 148 Ind. App. 611, 268 N.E.2d 626, *Thonert* was overruled to the extent of its interpretation of Ind. Rules of Procedure, Appellate Rule 7.2(A)(1)(a) as requiring separate certification of the Motion to Correct Errors.

Appellee next argues that appellant's brief fails to meet several of the requirements of Ind. Rules of Procedure, Appellate Rule 8.3. Our attention is first directed to appellant's failure to include a verbatim statement of the court's judgment under the statement of the case. However, this defect is not fatal. It has been held

that omission of the judgment does not necessarily mandate affirmance, especially where the relief granted or denied is basic and uncomplicated and the judgment is self-evident and implicit in the mere fact of the appeal. *Suess* v. *Vogelgesang* (1972), 151 Ind. App. 631, 281 N.E.2d 536.

Among the other alleged inadequacies of appellant's brief is the failure to set forth all of the facts relevant to the issues on appeal. With respect to this contention, we note that appellee has in its brief set forth a greatly detailed summary of the facts which we have found most helpful in considering the merits of this appeal.

This court prefers to decide cases on their merits whenever possible. *Thonert, supra.* Appellant has substantially complied with the requirements of Rule AP. 8.3. We therefore elect to proceed to a determination of the issues presented in this appeal.

## II.

At the close of all the evidence, the trial court granted defendant railroad company's motion for judgment on the evidence and directed the jury to return a verdict for the defendant.

Motions for judgment on the evidence are governed by Ind. Rules of Procedure, Trial Rule 50. The scope and application of this rule was examined by this court in *Galbreath* v. *City of Logansport* (1972), 151 Ind. App. 291, 279 N.E.2d 578. While recognizing that the language and procedure of TR. 50 differ from its model, Federal Rule 50 (Motion for a Directed Verdict), it was noted that Federal decisions provide appropriate guidance in interpreting our rule. The court then quoted extensively from *Swearngin* v. *Sears Roebuck & Company* (10th Cir. 1967), 376 F. 2d 637. The quoted material reads, in part:

> " 'A motion for judgment notwithstanding the verdict is actually merely a renewal of a previous motion for a directed verdict as to which the court has reserved decision. Thus the standard is the same for both motions as to when

they should be granted. Motions of this kind raise the question whether there is or was any substantial evidence to take the case to the jury. Since, if granted, they deprive the party of a determination of the facts by a jury, they should be cautiously and sparingly granted. *The court may not substitute its judgment on a question of fact for that of the jury, nor direct a verdict because the evidence decidedly preponderates for the moving party.*

\* \* \*

"The propriety of granting or denying a motion for a directed verdict is tested both in the trial court and on appeal by the same rule. *The trial court must view the evidence and all inferences most favorably to the party against whom the motion is made.* The reviewing court must do the same with respect to a judgment entered on a directed verdict or the denial of a motion for a directed verdict or a judgment entered notwithstanding the verdict. The decisions are many and the rule is the same both on appeal, and on the hearing of the motion in the trial court.' 2B Barron & Holtzoff, Fed. Prac. and Proc., § 1075, at 375, 378 (Rules ed. 1961)." (Our Emphasis.)

It has also been held that the standards for directing a verdict which were developed in case law prior to the enactment of TR. 50 are still applicable. *Jordanich* v. *Gerstbauer* (1972), 153 Ind. App. 416, 287 N.E.2d 784. Drawing upon earlier case law, this court in *Mamula* v. *Ford Motor Company* (1971), 150 Ind. App. 179, 275 N.E.2d 849, said:

"When passing on a motion for a directed verdict, the court is merely called on to determine if there is *some* evidence of negligence on the part of the defendant which the jury is entitled to consider. Jones v. Furlong (1951), 121 Ind. App. 279, 97 N.E.2d 369. *Where the evidence is such that the minds of reasonable men might differ,* or if the determination of negligence depends on conflicting evidence, then the question is for the jury. Hatmaker v. Elgin, Joliet & Eastern Railway Company (1956), 126 Ind. App. 566, 133 N.E.2d 86; Heiny v. Pennsylvania Railroad Company (1943), 221 Ind. 367, 47 N.E.2d 145; Robertson Brothers Department Store v. Stanley (1950), 228 Ind. 372, 90 N.E.2d 809; Haney v. Meyer (1966), 139 Ind. App. 663, 215 N.E.2d 886; Oliver v. Clemons' Estate (1968), [142 Ind. App. 499] 236 N.E.2d 72.

"Therefore, a directed verdict is proper only when the evidence is without conflict and is susceptible of but one inference in favor of the moving party. State Farm Life Ins. Co. v. Spidel (1964), 246 Ind. 458, 202 N.E.2d 886; Gibson v. Froman (1965), 138 Ind. App. 497, 212 N.E.2d 25; Mitchell v. Smith (1965), 138 Ind. App. 93, 211 N.E.2d 809; Reynolds v. Langford (1961), 241 Ind. 431, 172 N.E. 2d 867."

In this appeal, we must therefore determine whether there was any evidence of negligence or a reasonable inference thereof which required submission of the cause to the jury.

### III.

IC 1971, 8-6-4-1 (Burns Code Ed.), at the time of the collision, provided:

"It shall be the duty of all railroad companies operating in this state, to have attached to each and every locomotive engine, a whistle and a bell, such as are now in use or may be hereafter used by all well managed railroad companies, and the engineer or other person in charge of, or operating such engine upon the line of any such railroad, shall, when such engine approaches the crossing of any turnpike or other public highway in this state, beginning not less than eighty [80] rods from such crossing, sound the whistle on such engine distinctly not less than three █ times, which sounding shall be prolonged or repeated until the crossing is reached, and ring the bell attached to such engine continuously from the time of sounding such whistle until such engine shall have fully passed such crossing: Provided, That, nothing herein shall be so construed as to interfere with any ordinance that has been or may hereafter be passed by any city or incorporated town in this state regulating the management or running of such engines or railroad within the limits of such city or incorporated town: Provided, further, That all penalties incurred under the Act of March 29, 1879, are hereby repealed." [Acts 1943, ch. 208, § 1, p. 618.]

It has been consistently held that the failure of a railroad to comply with the above statutorily prescribed duty constitutes negligence *per se*. See, *Bartley* v. *Chicago and Eastern Illinois Railway Co.* (1939), 216 Ind. 512, 24 N.E.2d 405; *Callahan* v. *New York*

*Central Railroad Co.* (1955), 125 Ind. App. 631, 125 N.E.2d 263.

Smith argues that there was evidence adduced at trial that the railroad failed to comply with the above statute and, hence, was negligent as a matter of law. Reliance is placed upon the statement and testimony of independent witness Herman Henderson. The evidence reveals that Henderson was travelling west on U.S. 30 and had stopped his automobile at the crossing in obedience to the flashing signal warning of the train's approach. He testified that from the time he saw the warning lights begin to flash until the time the impact occurred, he did not hear a train bell or whistle of any kind. Smith further directs our attention to other testimony that the train's whistle and the crash were heard almost simultaneously.

Appellee railroad company submits that Henderson's negative testimony was not evidence of probative value from which the jury could have found or inferred that the train's whistle or bell were not sounded in accordance with the statute. However, we cannot agree that the cases cited by the railroad support its contention. *Hummel* v. *New York Central Railroad Co.* (1946), 117 Ind. App. 22, 66 N.E.2d 901, affirms the general rule that the testimony of one who was near a crossing and in a situation to have heard the whistle, that he did not hear it, is sufficient to support an inference that a warning was not given. The court's specific holding that the negative testimony of a certain witness was insufficient to support the inference was based upon the particular testimony in that case. The court said:

> *"Her negative testimony would have probative value if it could fairly be said that under all the circumstances she would have heard the whistle if it were blown, but such is not the case here.* She testified she did not hear the whistle, it is true, but the inference that she did not hear it because it was not blown finds no support in the evidence in the light of her testimony that because she had become so accustomed to hearing trains whistle, *she never noticed*

*or heard them and would not have heard the whistle in any event."* (Our emphasis.)

Another case cited by the railroad company, *Pennsylvania Railroad Co.* v. *Rizzo* (1949), 119 Ind. App. 505, 86 N.E.2d 91, reaffirmed the general rule stated in *Hummel* and was decided upon the basis of the particular witness' testimony.

Unlike those witnesses in the above cases, Henderson did not reside in the area of the crossing. Waiting in his automobile at the crossing, he observed the approaches of both the train and the truck. The facts surrounding Henderson's testimony materially differ from the situation in *Hummel* since the witness in *Hummel* did not actually see the collision occur and had become so accustomed to train whistles that she never noticed or heard them.

In discussing the quantum of evidence necessary to avoid a directed verdict, this court in *Mamula* v. *Ford Motor Co. supra,* said:

> "Certain Indiana Appellate Court decisions in recent years have seemed to hold that there must be a total lack of *substantial* evidence to avoid a directed verdict. Richey v. Sheaks (1967), 141 Ind. App. 423, 228 N.E.2d 429; Layman v. Hall Omar Baking Co. (1965), 138 Ind. App. 273, 213 N.E.2d 726, 215 N.E.2d 692; Sparks v. Baldwin (1964), 137 Ind. App. 64, 205 N.E.2d 173; Bradford v. Chism (1963), 134 Ind. App. 501, 186 N.E.2d 432. Other language with essentially the same meaning as 'substantial' has also been used, such as 'substantial evidence of probative value' or 'more than a scintilla or suspicion.' We think any conflict between these cases and the standard defined by our Supreme Court, *i.e.,* 'any evidence' is more apparent than real. A close examination of these cases indicates lip service to the 'substantial' test while applying the 'any evidence' rule in result. Through frequent usage aged concepts often become encrusted with unrelated layers of distortion which must be broken away from time to time. This is such an occasion.
>
> * * *
>
> ". . . [T]he cases cited herein support the rule that whenever there is *any* evidence allowing reasonable men to differ, a plaintiff should be given the benefit of the doubt, even though he has not *substantially* supported his allegations.
>
> * * *

"What harm can result from permitting a plaintiff a jury decision when a *reasonable* inference from the evidence exists in his favor? The trick is to determine what constitutes a 'reasonable inference' and what is mere conjecture or speculation. To require an issue to be submitted to the jury, there must be something more than a mere scintilla of evidence. *Hollowell* v. *Greenfield* (1966), 142 Ind. App. 344, 216 N.E.2d 537."

In our opinion, the testimony of Henderson is sufficient to support a reasonable inference that the train's whistle and bell were not sounded.

The railroad emphasizes the fact that other witnesses testified to hearing the train's whistle and that the train crew testified that the whistle was blown and the bell was rung almost continuously from the time the engine reached a whistle post located 540 feet from the highway. However, it is of no consequence that Henderson's testimony appears to be against the weight of the evidence. In considering the railroad's motion for judgment on the evidence, it was incumbent on the trial judge to view the evidence most favorable to Smith. We, as the reviewing court, must do the same.

Smith contends that even assuming a finding that the train's whistle and bell were sounded continuously from a point 800 feet south of the highway, as the engineer testified, the whistle statute was yet violated since it requires the sounding of the whistle and bell from a point not less than 80 rods or 1320 feet from the highway. Smith therefore asserts that under the undisputed evidence, the railroad was negligent *per se*.

The railroad counters by arguing that its failure to literally comply with the statute does not constitute negligence as a matter of law since non-compliance was justifiable or excusable under the circumstances of this case.

The evidence reveals that prior to the collision the train had engaged in a switching movement to pick up a box car located on a siding south of the highway. The switch stand was less than 80 rods from the highway. After completing the

movement, the engine was only approximately 58 rods from the highway. It is submitted that literal compliance with the statute would have required the train to back up to a point 80 rods south of the highway before proceeding.

It is true that under certain circumstances, non-compliance with a duty prescribed by statute or ordinance may be excusable. This is true, for example, where compliance is impossible. Under such circumstances, the violation becomes merely *prima facie* evidence of negligence. *New York Central Railroad Co.* v. *Glad* (1962), 242 Ind. 450, 179 N.E.2d 571; *Larkins* v. *Kohlmeyer* (1951), 229 Ind. 391, 98 N.E.2d 896.

In our opinion, under the circumstances present in this case, the jury could have reasonably found that the apparent inability to comply literally with the whistle statute was excusable. Of course, inability to comply with the 80 rod distance requirement would not excuse a failure to comply with the statute to whatever extent possible. As has been previously demonstrated, there is evidence in the record from which it may be inferred that no whistle or bell was sounded at all. Our standard of review mandates acceptance of that inference, and our determination of the issues presented in this case must rest upon that assumption.

## IV.

Assuming negligence *per se* for failing to sound the statutory warnings, it does not necessarily follow that the railroad is liable *per se* to plaintiff. Liability must be predicated upon a finding that the alleged negligence either proximately caused or contributed to plaintiff's injuries.

The railroad argues that there is no causal connection between plaintiff's injuries and the alleged failure of the train to sound advance warning signals and that the sole proximate cause of the accident was the driving of the truck into the side of the train.

In support of its contention, railroad cites several cases

involving vehicles being driven into the sides of trains standing upon or moving across a highway. Of these cases, railroad company relies heavily upon *New York Central Railroad Co.* v. *Gardner* (1940), 107 Ind. App. 366, 24 N.E.2d 811 and *New York Central Railroad Company* v. *Casey* (1938), 214 Ind. 464, 14 N.E.2d 714. In our opinion, however, these cases are not dispositive of the issues in the case at bar.

*Gardner, supra,* involved a collision between an automobile and a train composed of fifty to sixty coal cars. The automobile struck the moving train only four or five car lengths from the caboose. In *Casey, supra,* the plaintiff was a passenger in an automobile which collided with one of the cars near the rear of a train approximately 3,000 feet in length.

In these cases it was clear that there could have been no causal connection between the plaintiffs' injuries and any alleged failure to sound a warning of the train's approach. However, the facts of the instant case distinguish it from the above line of decisions. It is true that the truck in which Smith was riding struck the side of defendant's train. However, both the train and the truck reached the crossing at approximately the same time.

Railroad alleges that the truck driver was negligent in failing to comply with IC 1971, 9-4-1-106 (Burns Code Ed.), which reads:

"Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty [50] feet but not less than ten [10] feet from the nearest track of such railroad and shall not proceed until he can do so safely, when:

"(a) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train.

"(b) A crossing gate is lowered or when a human flagman gives or continues to give a signal of the approach or passage of a train.

"(c) A railroad train, as defined in this act [9-4-1-1—9-4-1-138], approaching within approximately one thousand five hundred [1,500] feet of a highway crossing emits a signal audible for such distance and such train, by reason

of its speed or nearness to such crossing, is an immediate hazard.

"(d) An approaching train is plainly visible and is in hazardous proximity to such crossing. [Acts 1939, ch. 48, § 100, p. 289.]"

The undisputed evidence reveals that warning flashers were operating at the crossing at the time of the collision and that the train was plainly visible and in hazardous proximity to the crossing as the truck approached. The weather was clear and sunny, and the pavement in the vicinity of the crossing was dry. The only reasonable inference that may be drawn from the evidence is that the driver of the truck violated the above statutory duty and was negligent as a matter of law. Further, the alleged failure of the train crew to comply with the whistle statute could not have relieved the driver of the truck from complying with the above statutory duty. *New York Central Railroad Co.* v. *Glad; supra.* It is apparent that plaintiff Smith would not have been injured had the driver of the truck complied with the imposed statutory duty and that the driver's failure to exercise the care required of him proximately contributed to Smith's injury.

If, in fact, it is found that the railroad violated the whistle statute, it must then be determined whether such negligence proximately contributed to plaintiff's injuries. Railroad takes the position that the negligence of the truck driver was an intervening independent force which severed the chain of causation from the original alleged wrongful act of failing to sound a warning of the train's approach to the crossing.

In *New York Central Railroad Co.* v. *Cavinder* (1965), 141 Ind. App. 42, 211 N.E.2d 502, this court said:

"Where there is an independent responsible agency intervening between the defendant's negligence and the injury, the question whether the original negligence is the proximate cause of the injury is to be determined by whether the agency might have been reasonably expected under the circumstances to intervene in such a way as to be likely to produce an injury similar to the one actually caused. *Northern Ind. Transit, Inc.* v. *Burk, supra* (1950),

228 Ind. 162, 175-177, 89 N.E.2d 905, 17 A.L.R. 2d 592; *Engle, Admr.* v. *Director General Railroads* (1922), 78 Ind. App. 547, 551, 133 N.E. 138 (Transfer denied). 21 Ind. Law Encyc., *Negligence,* § 67, p. 331.

"Generally, where harmful consequences are brought about by intervening independent forces the operation of which might have been reasonably foreseen, then the chain of causation extending from the original wrongful act to the injury is not broken by the intervening and independent forces and the original wrongful act is treated as a proximate cause. *Northern Ind. Transit, Inc.* v. *Burk, supra* (1950), 228 Ind. 162, 176-177, 89 N.E.2d 905, 17 A.L.R. 2d 592; *Chicago, etc. R. Co.* v. *Mitchell* (1914), 56 Ind. App. 354, 358-359, 105 N.E. 396; *Leatherman* v. *Gateway Transportation Company* (7th Cir. 1964), 331 F.2d 241, 243. 21 Ind. Law Encyc., Negligence, § 67, p. 332."

The question of proximate cause is generally reserved for determination by the jury. Only in cases where the facts are undisputed as to allow only a single inference or conclusion to be drawn therefrom, may the question become a matter of law to be determined by the court. If there exists any reasonable doubt as to proximate cause, it is a question of fact to be determined by the jury. *Baltimore & Ohio Railroad Co.* v. *Patrick* (1960), 131 Ind. App. 105, 166 N.E.2d 654; *New York Central Railroad Co.* v. *Cavinder, supra.*

We are unwilling to hold as a matter of law that the collision in the instant case was not a foreseeable consequence of the train's alleged failure to sound the statutorily required warnings of the train's approach to the crossing. We reach this result fully cognizant of the negligence of the truck driver. A jury might well find that this negligence did in fact break the chain of causation extending from the railroad's alleged original wrongful act to the injury. Our holding is simply that the question is one which the jury must decide.

## V.

Appellant argues that direction of a verdict for the defendant was improper since there is evidence in the record

upon which the jury could find that the engineer could have avoided the collision by applying the brakes of the train.

In substance, appellant is contending that the evidence warrants a determination by the jury of whether the railroad had the last clear chance to avoid the collision.

A succinct summarization of the doctrine of last clear chance is found in *National City Lines* v. *Hurst* (1969), 145 Ind. App. 278, 250 N.E.2d 507. Therein, the court said:

> "There has been a considerable volume of work done on the doctrine of last clear chance by this court over the last several decades. The latest definitive work on the subject is the case of *Bayne* v. *Turner*, 142 Ind. App. 580, 236 N.E.2d 503 (1968), (Transfer denied). In that case this court, at page 506 of 236 N.E.2d, in reviewing the holding of *Stallings* v. *Dick*, 139 Ind. App. 118, 210 N.E.2d 82 (1965), said:

> 'The essential elements of last clear chance, as stated in the *Stallings* case are as follows: (1) plaintiff must be in a position of peril; (2) defendant must have actual knowledge of plaintiff's peril; (3) defendant must have a later opportunity than the plaintiff to avoid the injury; (4) plaintiff must, if possible, extricate himself from his position of peril.'

> "The limits of the doctrine are narrow, and this is as it should be. It is intended to be limited to that special class of cases where, as was said in *Indianapolis Traction, etc. Co.* v. *Croly*, 54 Ind. App. 566, 587, 96 N.E. 973 (1913), (Transfer denied), '. . . their chances are equal, but the motorman [defendant] actually possesses the knowledge of the danger and appreciates the necessity of taking steps to avoid the injury, while the person injured has no actual knowledge of his danger, and does not appreciate the necessity of taking steps to avoid it.'

> "This limited scope may be, again, summarized prospectively as follows: 1) The defendant had actual knowledge of the plaintiff; 2) The defendant knew of the plaintiff's perilous position; 3) The defendant had physical control over the instrumentality and had the last opportunity through the exercise of reasonable care to avoid the injury; and 4) The plaintiff was oblivious to his own danger, notwithstanding his own contributory negligence. See: *Lewis* v. *Mackley*, 122 Ind. App. 247, 99 N.E.2d 442 (1952), (Transfer denied); *Lee, etc.* v. *Dickerson*, 131 Ind. App.

422, 171 N.E.2d 698 (1961); *Stallings* v. *Dick, supra; Ewing* v. *Biddle,* 141 Ind. App. 25, 216 N.E.2d 863 (1966)."

Our inquiry relevant to the question of whether the trial court erred in directing a verdict for the railroad must be whether there is any evidence in the record which would support a finding based upon the above elements.

It was the duty of two brakemen who were present in the engine of the train to observe traffic approaching the crossing from the west. They testified that they first observed the truck in which Smith was riding when the train was approximately 200 to 300 feet south of the crossing. It was estimated that the truck was approximately 900 to 1000 feet west of the crossing at that time. One of the brakemen testified that he observed the truck continually until the time of impact. Both men testified that by the time it became apparent to them that the truck would be unable to stop, the train was at a distance of less than 30 feet from the crossing.

Defendant's exhibits A and A-1 comprise a statement given by independent witness Herman Henderson, who was travelling west on U.S. 30 and had stopped his automobile at the crossing. The witness observed the approaches of both the train and the truck and upon determining that a collision was imminent, he backed his automobile away from the crossing. His statement indicates that the train was approximately 150 feet south of the crossing when he determined that a collision might occur. An unknown automobile operator in the lane next to Henderson also backed his vehicle.

In his deposition, the train engineer, Alfred Vasta, stated that the train could have been stopped in a distance of 50 to 60 feet at the speed at which it was travelling at the time of impact.

The relative distances of the train and the truck from the crossing at various times prior to impact are necessarily contingent upon the speeds at which each was proceeding. As we earlier observed, varying estimates were given concerning the speeds of the train and the truck. In its brief, railroad

points to portions of Henderson's testimony which tend to conflict with the estimate given in his statement concerning the distance of the train from the crossing. Our attention is also directed to expert testimony which tends to conflict with the engineer's estimate of the distance in which the train could have been stopped. Resolution of these factual issues must, of course, rest with the jury.

Under the evidence in this case it was within the province of the jury to determine whether the train crew had the last clear chance to avoid the collision.

We therefore conclude that the trial court erred in granting railroad company's motion for judgment on the evidence and directing the jury to return a verdict for defendant. Judgment reversed with instructions to grant plaintiff a new trial.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 311 N.E.2d 462.