MICHAEL R. GILBERT *v.* STONE CITY CONSTRUCTION COMPANY, INC., W. L. THOMAS, INC.

[No. 1-875A149.  Filed December 8, 1976.  Rehearing denied January 20, 1977.]

*Donald L. Tunnell, Richard W. Yarling, John W. Hammel,* of Indianapolis, for appellant.

*Lawrence H. Hinds, Martz, Beattey, Hinds & Wallace,* of Indianapolis, *Roy A. Pope, Pope, Pope & Clayton,* of Indianapolis, *Richard H. Montgomery, Montgomery, Elsner & Parieck,* of Seymour, *Ruel W. Steele, Steele, Steele & Steele,* of Bedford, for appellees.

## CASE SUMMARY:

LOWDERMILK, J.—Plaintiff-appellant Michael R. Gilbert appeals from a judgment and verdict denying his claim for relief against defendants-appellees Stone City Construction Company, Inc., (Stone City) and W. L. Thomas, Inc. (Thomas). At the close of all the evidence, the trial court entered judgment on the evidence against Gilbert on his products liability claim but submitted his negligence claim to the jury, who found against Gilbert.

We reverse.

## FACTS:

This case arose out of a construction accident in which Gilbert was severely injured when a road roller struck him from behind and ran over the lower part of his body. At the time, he was a highway construction inspector of the State of Indiana and was working at a construction project on which Stone City was a contractor.

He was standing beside and near the rear of a spreader which had been putting down stone on the shoulder of a traffic lane under construction. Gilbert had been collecting the receipts taken from the drivers of trucks dumping stone into the spreader.

Behind the spreader, Stone City operator Ricky Strunk was compacting the stone with the roller, which Stone City

had leased from Thomas eight to ten weeks prior to the mishap. Gilbert had his back to the roller.

Because the dump trucks had cut ruts in front of the spreader, Strunk was told to drive the roller around to the front of the spreader in order to smooth out the grade. As Strunk was driving the roller around the spreader, he ran over Gilbert without seeing him.

## ISSUES:

1. Whether the trial court erred in entering judgment on the evidence against Gilbert on his products liability claim.

2. Whether the trial court erred in refusing to give the jury Gilbert's tendered instructions number two, eight, and nine.

## DECISION:

ISSUE ONE:

Gilbert contends that the trial court erred in granting judgment on the evidence against him on his products liability claim.

A trial court may grant judgment on the evidence against a plaintiff at the close of all the evidence only if there is no reasonable evidence of probative value, or a reasonable inference therefrom, upon one or more of the factual issues necessary to recovery by the plaintiff. Ind. Rules of Procedure, Trial Rule 50; *Miller* v. *Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701; *Smith* v. *Chesapeake and Ohio Railroad Company* (1974), 160 Ind. App. 256, 311 N.E.2d 462.

In ruling on a defendant's motion for judgment on the evidence a trial court must determine if some evidence supporting the plaintiff exists on each issue. *Mamula* v. *Ford Motor Company* (1971), 150 Ind. App. 179, 275 N.E.2d 849. The trial court must view the evidence and the inferences therefrom most favorably to the plaintiff. *Smith, supra.*

Where reasonable men might differ about the evidence or where the determination of liability depends upon resolving conflicting evidence, the issue is one for a jury. Therefore, a trial court may properly grant judgment on the evidence against a plaintiff only where the evidence on one or more issues is without conflict and is susceptible of only an inference in favor of the defendant. *Mamula, supra.*

Inasmuch as this court must apply the same standard in reviewing the trial court's decision, *Smith, supra,* we will examine the requirements for recovery under the products liability theory set forth in Restatement (2d) of Torts § 402A (1965), which has been adopted as the law of this state. *Ayr-Way Stores, Inc.* v. *Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335. § 402A states:

> "*Special Liability of Seller of Product for Physical Harm to User or Consumer*
>
> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

## A—STATUS OF THE PARTIES

At first glance, § 402A would appear to be inapplicable to the instant case because of the status of Thomas, who only leased the roller to Stone City, and Gilbert, who was not a consumer or user, but was only a bystander.

## § 402A APPLIES TO ONE IN BUSINESS OF LEASING

However, in Indiana a commercial sale is not an essential element of recovery under § 402A. See J. Vargo, *Products Liability, Survey of Recent Developments in Indiana Law*, 9 IND. L. REV. 270, 275 (No. 1 1975). The test is whether a defendant injected a harmful defective product into the stream of commerce. *Link* v. *Sun Oil Company* (1974), 160 Ind. App. 310, 312 N.E.2d 126. Therefore, liability under § 402A will attach to one who places such a product in the stream of commerce by sale, lease, bailment, or other means. *Perfection Paint & Color Company* v. *Konduris* (1970), 147 Ind. App. 106, 258 N.E.2d 281, n. 2. See Annot., 52 A.L.R.3d 121, § 3 (1973).

Thomas' status as a lessor was thus irrelevant. But for § 402A to apply it was necessary to show that Thomas was engaged in the business of providing construction equipment to others—even if the corporation pursued other businesses as well. § 402A, comment f. The rationale for this requirement is stated as:

> ". . . The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods. This basis is lacking in the case of the ordinary individual who makes the isolated sale, and he is not liable to a third person, or even to his buyer, in the absence of his negligence. . . ." *Id.*

In *Price* v. *Shell Oil Company* (1970), 2 Cal.3d 245, 85 Cal. Rptr. 178, 466 P.2d 722, the court held that there was sufficient evidence for a jury to find that Shell was in the business of leasing oil trucks where Shell had entered into more than a single lease transaction, the leasing was part of an organized and continuing operation, and trucks had been leased to other lessees.

In *Bachner* v. *Pearson* (Alaska 1970), 479 P.2d 319, 328, a

lessor was held liable under § 402A where the lease of the defective product was an "essentially commercial transaction falling within the scope of the defendant's usual course of business."

In the instant case, W. L. Thomas testified that he had worked in the construction business all of his life and that his corporation routinely leased equipment which it was not presently using to other construction companies. He stated that the roller in question had been leased to three or four contractors other than Stone City.

We conclude that there was some evidence produced which tended to show that Thomas was engaged in the leasing business. This issue was one about which reasonable men could differ.

## § 402A ALLOWS RECOVERY BY FORESEEABLE BYSTANDERS

In Indiana, bystanders "whom the . . . supplier should reasonably foresee as being subject to the harm caused by the defect" may recover under § 402A for injury caused by a defective product. *Chrysler Corporation* v. *Alumbaugh* (1976), 168 Ind. App. 363, 342 N.E.2d 908, 917. E.g. *Ayr-Way Stores, supra; Perfection Paint, supra.* See *Pike* v. *Frank G. Hough Company* (1970), 2 Cal.3d 465, 85 Cal. Rptr. 629, 467 P.2d 229 (construction worker on foot struck from behind by heavy equipment); Annot., 33 A.L.R.3d 415, § 5 (1970).

W. L. Thomas testified that through his experience he was aware of the congestion of equipment and pedestrians which occurs when dump trucks haul stone into a spreader which is used in conjunction with a roller.

We conclude that there existed some evidence that Thomas should reasonably have foreseen that a construction worker on foot could be harmed by a defective roller. Reasonable men could also differ on this issue.

## B—NECESSARY PROOF

For a plaintiff to establish a products liability claim, it must be shown (1) that he was injured by the product, (2) because it was defective and unreasonably dangerous, (3) that the defect existed at the time the product left the hands of the defendant, and (4) the product was expected to and did reach the consumer without substantial change in its condition. § 402A, *supra;* W. Prosser, *Torts* § 103 (4th Ed. 1971).

It is not disputed that the roller injured Gilbert.

Gilbert argues that the roller was defective in two respects. First, he notes that the clutch on the roller slipped so that the operator had to hold the clutch lever in position in order to run the machine. He contends that this was a defect which was unreasonably dangerous in that holding the lever in position restricted the operator's view of where the roller was going. Secondly, Gilbert points to the roller's design, which featured a frame which blocked the operator's view of what was immediately in front of the machine. He maintains that this amounted to an unreasonably dangerous defect inasmuch as the roller lacked safety devices to either alleviate the blind spot or to warn those in front of the machine of the danger.

Of the requirement that a plaintiff show that the injurious product was defective, Professor Prosser wrote:

"There must . . . be something wrong with the product which makes it unreasonably dangerous to those who come in contact with it. An ordinary pair of shoes does not become unreasonably unsafe merely because the soles become somewhat slippery when wet; nor is there unreasonable danger in a hammer merely because it can mash a thumb. Knives and axes would be quite useless if they did not cut.

"The question of when a product is unreasonably unsafe has occupied a good many writers. The language of the Second Restatement of Torts in dealing with it is that for strict liability the product must be 'in a defective condition unreasonably dangerous to the user or consumer or to his property.' This terminology may perhaps leave

something to be desired, since it is clear that the 'defect' need not be a matter of errors in manufacture, and that a product is 'defective' when it is properly made according to an unreasonably dangerous design, or when it is not accompanied by adequate instructions and warning of the dangers attending its use.

"The prevailing interpretation of 'defective' is that the product does not meet the reasonable expectations of the ordinary consumer as to its safety. . . ." Prosser, *supra*, § 99, at 659.

§ 402A, comment i explains:

". . . The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. . . . The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. . . ."

## WHETHER THE CLUTCH WAS A DEFECT

Strunk testified that on the day of the accident the clutch lever would pop out of position. He recalled holding it in position at the time of the accident. He testified that holding the clutch lever in place did not interfere with his view to the front of the roller but admitted stating, at a time nearer to the time of the accident:

"It would of been a lot easier run if I hadn't had to hold the clutch lever up to keep in it gear. It is supposed to stay up by itself but I had to hold it and I couldn't get over to my right as far to my right more to see ahead."

He also said that he did not see Gilbert in front of the roller.

We conclude that there was some evidence that the operator was holding the clutch lever in place because the clutch would not work properly. There was conflicting evidence as to whether this problem prevented the operator from seeing Gilbert. Reasonable men could also differ as to whether a piece of heavy equipment which works in a manner which impedes its operator's ability to see where it is going meets the reasonable safety expectations of the ordinary bystander.

See *Pike, supra.* The question of "whether a product is dangerously defective" is one for a jury. *Phillips* v. *Kimwood Machine Company* (1974), 269 Ore. 485, 525 P.2d 1033, 1040. Accord: *Robinson* v. *Deck* (1975), 33 Ill. App.3d 71, 337 N.E.2d 316; *Collins* v. *Musgrave* (1975) 28 Ill. App.3d 307, 328 N.E.2d 649.

## WHETHER THE LACK OF SAFETY DEVICES CONSTITUTED A DEFECT

A product may fail to meet reasonable safety expectations "by failing to cope with foreseeable mishaps . . . by lacking feasible safety devices . . ." R. Dickerson, *Products Liability: How Good Does a Product Have to Be?*, 42 IND. L.J. 301, 305 (1967). E.g. *Dudley Sports Co.* v. *Schmitt* (1972), 151 Ind. App. 217, 279 N.E.2d 266.

Those who come into contact with a product may reasonably expect its supplier to provide feasible safety devices in order to protect them from dangers created by its design. *Dickerson, supra,* at 307. See *Wright* v. *Massey-Harris, Incorporated* (1966), 68 Ill. App.2d 70, 215 N.E.2d 465.

In *Zahora* v. *Harnischfeger Corporation* (7th Cir. 1968), 404 F.2d 172, the plaintiff repairman was injured while working on a crane in an Indiana factory. The operator of the crane said that he looked toward where the repairman was but did not see him because the design of the operator's cab blocked his view in that direction. The operator then moved the crane cab, crushing the plaintiff. In reversing the district court's summary judgment for the defendant manufacturer the appellate court stated:

> "Viewing the implications and inferences of the operator's deposition in a light most favorable to the plaintiff, we find his comments suggest it is at least disputable whether or not the cab design permitted the operator that amount of vision necessary to the safe operation of the crane." 404 F.2d at 177.

In *Pike, supra,* the plaintiff construction worker was injured when an earth mover struck him from the rear while backing up. The design of the machine created a blind spot to its rear, where the plaintiff was standing when the mishap occurred. The earth mover was equipped with neither rear-view mirrors to minimize the blind spot nor audible or visible signals to warn those working around the machine, although there was evidence that such safety devices were feasible. The Supreme Court of California reversed the trial court's granting of the defendant manufacturer's motion for nonsuit, holding that the plaintiff's evidence presented a jury question on his products liability claim.

In *Wirth* v. *Clark Equipment Company* (9th Cir. 1972), 457 F.2d 1262, the plaintiff longshoreman was injured when struck by a large machine designed to transport containerized cargo. The design of this carrier had the operator's cab at the rear, from where the driver's forward view was seriously limited. This machine was also equipped with neither mirrors to alleviate the blind spot nor an audible signal which could be heard by those working around the carrier. The district court withdrew the plaintiff's strict liability claim from the jury but submitted to them his negligence claim, on which they found for the defendant manufacturer. The appellate court reversed, finding that the plaintiff's evidence on the products liability claim was sufficient to warrant allowing the jury to decide it.

In the instant case, another Stone City employee who had operated the roller in question testified that an operator could not see what was in front of the machine inasmuch as the frame in front of the operator's platform obstructs his forward view.

Pictures identified by a Stone City superintendent as depicting the roller in question showed that the operator's platform was at the very rear of the machine. They also show that the roller's frame extended from the front of

the operator's platform to the very front of the machine, above the front roller.

Strunk testified that the frame came up to his chest when he stood on the operator's platform. Strunk also testified that he looked toward the front of the roller but did not see Gilbert.

Both Strunk and the other Stone City employee testified that there was no audible signal on the roller to warn those working around it.

There is a rebuttable presumption that a warning to Gilbert would have been heard and heeded. *Nisson Trampoline Company* v. *Terre Haute First National Bank* (1975), Ind. App., 332 N.E.2d 820, *reversed on other grounds* (1976), 265 Ind. 457, 358 N.E.2d 974.

The picture revealed no mirrors on the roller to allow an operator to see into the blind spot.

A witness whose occupation was demonstrating construction equipment to buyers and instructing contractors on the operation of such machines testified that it would be feasible to equip the roller with an audible warning.

We conclude that there was some evidence that the design of the roller created a blind spot for its operator and some evidence that the roller was not equipped with safety devices to protect those working around it from that condition. It was for a jury to determine whether the lack of safety devices made the roller unreasonably dangerous. *Deem* v. *Woodbine Manufacturing Company* (1976), 89 N.M. 50, 546 P.2d 1207; *Casey* v. *Gifford Wood Company* (1975), 61 Mich. App. 208, 232 N.W.2d 360.

It was also the function of a jury to determine whether the condition of the roller was the proximate cause of Gilbert's injuries. *Yater* v. *Keil* (1976), 170 Ind. App. 135, 351 N.E.2d 920; *St. Joseph Bank & Trust Co.* v. *Wackenhut Corp.* (1976), 170 Ind. App. 288, 352 N.E.2d 842.

Thomas argues that the lack of mirrors and audible or visual signals could not make the roller defective inasmuch as neither federal nor industry safety standards required such devices.

Compliance with federal safety requirements does not establish a lack of a defect as a matter of law. See D. Campbell and J. Vargo, *The Flammable Fabrics Act and Strict Liability in Tort,* 9 IND. L. REV. 395 (No. 2 1976). And as this court stated in *Dudley Sports Co., supra,* at 151 Ind. App. 229:

> ". . . The fact that a particular product meets or exceeds the requirements of its industry is not conclusive proof that the product is reasonably safe. In fact, standards set by an entire industry can be found negligently low if they fail to meet the test of reasonableness. *The T. J. Hooper* (2d Cir. 1952), 60 F.2d 737."

## WHETHER THE CONDITIONS EXISTED AT THE RELEVANT TIMES

For a plaintiff to recover under § 402A, it must be shown that the injurious product was defective at the time it left the supplier's hands and that it reached the consumer without substantial change. *Ayr-Way Stores, supra.*

Although W. L. Thomas testified that the problem with the clutch did not exist at the time his corporation leased the roller to Stone City, he also stated that the problem was constant and was in the nature of rollers such as the one in this case.

Strunk testified that the clutch was popping out of position at the time of the accident.

We conclude that W. L. Thomas' second statement conflicted with his first one and that it was susceptible of an inference that the clutch problem existed at the time the roller left Thomas' hands. And there was some evidence that the problem was unchanged at the time Gilbert was injured. Therefore these issues also constituted questions for a jury.

·It was uncontroverted that the roller was not equipped with safety devices at the time it left Thomas' hands or at the time of the accident.

## C—DEFENSES

The parties discuss one of the defenses to products liability— incurred risk. *Gregory* v. *White Truck & Equipment Co., Inc.* (1975), 163 Ind. App. 240, 323 N.E.2d 280. One incurs all the normal risks of a voluntary act—so long as he knows and understands them, or if they are readily discernible by a reasonably prudent person in similar circumstances. *Cornette* v. *Searjeant Metal Products, Inc.* (1970), 147 Ind. App. 46, 258 N.E.2d 652.

Gilbert testified that he did not know that the roller was to be moved around the spreader.

The Stone City superintendent testified that Gilbert said the roller would have to be brought around the spreader if the trucks cut deep ruts.

Gilbert also stated that he had no training in operating construction equipment.

We conclude that there was conflicting evidence as to whether Gilbert was aware of the risks presented. And it is for a jury to determine whether dangerous defects in heavy equipment are readily ascertainable by a bystander. *Wirth, supra; Pike, supra; Merced* v. *Auto Pak Co., Inc.* (2d Cir. 1976), 533 F.2d 71. This case is therefore no exception to the rule that the issue of incurred risk is one for a jury. *Cornette, supra,* concurring opinion by Sharp, J., at 147 Ind. App. 55; *Sills* v. *Massey-Ferguson, Inc.* (N.D. Ind. 1969), 296 F. Supp. 776; *Brooks* v. *Dietz* (1976), 218 Kan. 698, 545 P.2d 1104.

## D—CONCLUSION

Inasmuch as issues properly for a jury existed on each prerequisite to recovery by Gilbert under the theory of

products liability—and on the issue of incurred risk—we conclude that the trial court erred in granting the defendant's motion for judgment on the evidence on Gilbert's products liability claim. *Miller, supra; Mamula, supra.*

This case presented close questions. We express no opinion on the ultimate determination by the finder of fact.

We need not discuss Gilbert's other assertions of error. *Bundy* v. *Ambulance Indianapolis Dispatch, Inc.* (1973), 158 Ind. App. 99, 301 N.E.2d 791.

We hereby reverse the trial court's judgment and remand this case for a new trial.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 357 N.E.2d 738.