LIBERTY MUTUAL INSURANCE
COMPANY, Plaintiff-Appellant,

v.

RICH LADDER COMPANY, INC. and
Schlatter Hardware, Inc.,
Defendants-Appellees.

No. 3–782A136.

Court of Appeals of Indiana,
Third District.

Nov. 23, 1982.

Larry A. Steele, Clifford & Steele, P.C.,
Fort Wayne, for appellant.

Peter G. Mallers, II, Adair, Perry, Beers, Mallers & Larmore, Fort Wayne, for appellees.

HOFFMAN, Presiding Judge.

Liberty Mutual Insurance Company appeals from a judgment on the evidence in favor of defendants Rich Ladder Company, Inc., and Schlatter Hardware, Inc., during a jury trial. Ind. Rules of Procedure, Trial Rule 50(A)(1).

The record discloses that in November 1977 Schlatter Hardware, a retail hardware store and warehouse, sold an eight-foot step-ladder to DSI, Inc. This ladder had been designed, manufactured, and distributed by Rich Ladder. On January 24, 1977, an employee of DSI, Inc., Richard Beard, was seriously injured when he fell while descending this ladder. Investigation revealed that Beard's fall may have been precipitated by a defect in the ladder itself.

Liberty Mutual, which insured DSI, Inc., and its employees under a workmen's compensation policy, subsequently brought suit against Rich Ladder and Schlatter Hardware attempting to recover compensation and medical payments made to Beard. Liberty Mutual alleged that the defendants had breached implied warranties of merchantibility and fitness for a particular purpose, that they were negligent, and that they were strictly liable in tort under a products liability claim.

The evidence adduced at trial from Liberty Mutual's expert, a professional engineer, revealed that the side rail of the ladder had broken inward at the bottom step. In the expert's opinion this had occurred as the result of the use of screws which were too small to provide a secure fastening of the diagonal brace to the step and side rails. The brace then failed after the undersized screw worked itself out gradually during the repeated bending of the side rail while the ladder was in use. It was further stated that the size of screw used by Rich Ladder was inadequate to meet OSHA standards. The bracing would have been much stronger had a bolt, rivet, or larger screw been used to secure the fastening.

At the conclusion of plaintiff's case, and notwithstanding the above testimony, the trial court held that Liberty Mutual had shown neither negligence nor breach of warranty on behalf of the defendants. A judgment on the evidence was accordingly entered in favor of the defendants. Liberty Mutual contends that such was error.

In *Dibortolo v. Metropolitan Sch. District of Washington Twp.* (1982) Ind.App. 440 N.E.2d 506 at 508 it was recently held that:

" . . . judgment on the evidence is proper only where there is a lack of evidence of probative value upon one or more of the factual issues necessary to support a verdict, and no reasonable inference in favor of the plaintiff can be drawn from this evidence. *Miller v. Griesel* (1974) 261 Ind. 604, 308 N.E.2d 701, 707; *Walters v. Kellam & Foley* (2d Dist.1977) 172 Ind.App. 207, 360 N.E.2d 199, 205. The evidence must be viewed in the light most favorable to the non-moving party, and *if there is any evidence of probative value or reasonable inference therefrom which supports the plaintiff's claim,* or if the evidence conflicts such that reasonable minds might draw differing conclusions, *judgment on the evidence is inappropriate.* Only where the evidence is without conflict and susceptible to one inference in favor of the moving party should judgment on the evidence be rendered. *P–M Gas & Wash Co., Inc. v. Smith* (2d Dist. 1978) Ind.App., 383 N.E.2d 357, 359; *Mamula v. Ford Motor Co.* (1971) 150 Ind. App. 179, 275 N.E.2d 849, 852." (Emphasis supplied.)

It is clear in the instant cause that the trial court misapplied the above standard.

After the motion at issue was granted, the following exchange occurred between counsel for Liberty Mutual and the trial court:

"Mr. Steele: Your Honor, with respect to that, I must respectfully disagree. We had ample testimony of a defect. We have testimony relating to OSHA standards requiring metal braces be secured with a secure fastener. We have Mr.

Dermer, Professer Dermer's testimony that the metal brace was secured by a wood screw, a wood screw which was small and was inadequate. He testified that other fasteners could have been used, rivets, bolts, even a larger screw. That was the defect, which we proved through the evidence, Your Honor. It was there, it's a question of fact as to whether or not the jury believes that's a defect, it is for the trier of fact to determine.

"Court: *The court concluded,* in taking that into consideration, *that this was not a defect* in the design and in the construction of the ladder, and did not consider this, under the circumstances, and this happened down at the spot on the ladder, and this was the only ladder, apparently, that design affected. *The court felt there was no question that there was a break in the side member of the ladder, but it was not caused by the construction of the ladder.*

"Mr. Steele: The testimony was, Your Honor, that the wood screw failed, and that caused the product to fail, the side rail to break, causing Mr. Beard to fall. There is ample testimony . . .

"Court: The fact that one screw failed does not make a total as being defective in all of them.

"Mr. Steele: Your Honor, we're not saying that the total ladder was defective. We are saying that the method of securing that brace to the ladder was defective. That screw was inadequate to do the job. There was probably two to three hours of testimony as to how that contributed to the break. We are not condemning the rest of the ladder. We're saying that brace should have been secure, as required by OSHA regulations, the standards. It was not a secure fastener, it failed, it wiggled loose because it was too small and inadequate.

"Court: The question of wiggling loose was another matter of evidence to be presented, whether it did wiggle loose because of use, abusive use, or just use of the ladder, and *the court took all of those matters into consideration and thought there was not a preponderance of evidence to substantiate the plaintiff's complaint.*

"Mr. Steele: There is no evidence, Your Honor, of abuse. He was using the ladder in the regular course of business. He was just climbing it. He wasn't over-reaching, he centered himself, and as he started to descend, the ladder failed. The ladder was brand new. We have evidence that the ladder was manufactured in October of 1977, sold in November, and failed just two months after it was sold, and it failed because of that screw being inadequate.

"Court: The court has taken all of that into consideration. The court will stand on its decision in granting the motion for directed verdict." (Emphasis supplied.)

*Record* at 323–326.

Thus it is quite evident that the trial court impermissibly weighed the merits of the testimony during plaintiff's case. It is not the function of the trial court to determine whether plaintiff has presented a preponderance of the evidence during a jury trial. Nonetheless, this Court will uphold the grant of judgment on the evidence unless the record discloses evidence of probative value on each essential element of Liberty Mutual's claims. *Craven v. Niagara Mach. & Tool Works, Inc.* (1981), Ind.App., 417 N.E.2d 1165.

Regarding products liability claims, 2 Restatement of Torts, 2d, § 402A, has been expressly adopted as the law of this State.[1] *Cornette v. Searjeant Metal Prdcts.* (1970), 147 Ind.App. 46, 258 N.E.2d 652. That section requires the plaintiff to establish (1) that he was injured by the

---

1. It should be noted that this section has been codified into Indiana law at IC 1971, 34–4–20A–3 (Burns 1982 Supp.). Pursuant to IC 34–4–20A–8(b); however, this chapter does not apply to a cause of action that accrued prior to June 1, 1978.

product, (2) because it was defective and unreasonably dangerous, (3) that the defect existed at the time the product left the hands of the defendant, and (4) the product was expected to and did reach the consumer without substantial change in its condition. *Gilbert v. Stone City Constr. Co.* (1976), 171 Ind.App. 418, 357 N.E.2d 738. The appellees defend this appeal solely on the basis that Liberty Mutual made no showing as to requirement (3) above. However, the corporate president of Schlatter Hardware testified that when his company received ladders they were visually inspected, but no structural changes were made. This evidence in conjunction with the testimony concerning the ladder's defectiveness was sufficient to send this claim to the jury for resolution. *American Optical Co. v. Weidenhamer* (1980), Ind.App., 404 N.E.2d 606.

▆▆▆ Liberty Mutual further contended that Rich Ladder was negligent in the design of the ladder.[2] While a manufacturer is under no duty to produce accident-proof products, it is legally bound to design and build products which are reasonably fit and safe for the purpose for which they are intended. *Zahora v. Harnischfeger Corp.* (7th Cir.1968) 404 F.2d 172. Liberty Mutual presented evidence which tended to show that Rich Ladder breached this duty by using screws of inadequate size to fasten the braces securely, and that Beard was injured as the proximate result thereof. Whether the screws used by Rich Ladder constituted an unreasonably dangerous hidden defect in design was therefore an issue which was properly presented for jury determination.

▆▆▆ Similarly, the evidence presented by Liberty Mutual was sufficient to render a determination of whether the defendants had breached their implied warranty of merchantability. IC 1971, 26–1–2–314 (Burns Code Ed.). Liberty Mutual presented evidence that the ladder was unfit for the ordinary purposes for which such goods are used, *i.e.,* for climbing. *Jones et al. v.*

*Abriani* (1976), 169 Ind.App. 556, 350 N.E.2d 635. However, Liberty Mutual presented no evidence as to whether defendants had reason to know at the time of sale of any particular purpose for which the ladder was required. Nor does it appear that the ladder was used for any purpose other than that for which it was ordinarily intended. Therefore, the trial court's grant of judgment on the evidence as to the issue of breach of the implied warranty of fitness for a particular purpose was proper. *Jameson Chemical Co., Ltd. v. Love* (1980), Ind. App., 401 N.E.2d 41. *See also* White and Summers, *Handbook on the Uniform Commercial Code* (1980) § 9–9, p. 357.

This cause is accordingly remanded for a new trial consistent with the holding above.

Reversed in part and affirmed in part.

GARRARD and STATON, JJ., concur.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆

---

**2.** IC 1971, 34–4–20A–1 now provides that products liability actions accruing after June 1, 1978, be governed by the provisions of IC 34– 4–20A–1 *et seq.,* regardless of whether such actions are based on negligence or strict liability in tort.