**Martin L. NEWTON and Deborah A. Newton, Plaintiffs,**

v.

**G. F. GOODMAN AND SON, INC., Defendants.**

No. S 80–2.

United States District Court, N. D. Indiana, South Bend Division.

Aug. 10, 1981.

David T. Stutsman, Elkhart, Ind., for plaintiffs.

Gerald A. Kamm, South Bend, Ind., for defendants.

## MEMORANDUM AND ORDER

SHARP, District Judge.

This cause went to trial before a jury solely on the theories of strict liability and breach of warranty.

In the Second Amended Complaint and the Pre-Trial Orders Plaintiffs contended that Defendant designed, manufactured and sold the automatic rubber cutting machine to Goshen Rubber Company, Inc., that such machine was involved in the injuries to Plaintiff Martin L. Newton, that Defendant was engaged in the business of designing, manufacturing and selling such machines in interstate commerce and that the machine was expected to and did reach the employer of Martin L. Newton without substantial change in its condition. Plaintiffs also contended that the machine was in a defective condition and unreasonably dangerous to Plaintiff, which proximately caused the injuries to Martin L. Newton.

It was specifically contended that the machine was designed to use a photo-electric eye for automatic activation of its cutting function, that the design and manufacture of the electrical controls was defective, that Defendant failed to provide adequate operating instructions for the controls of the machine and that no warnings were provided for the machine.

The Court instructed the jury as follows on the law of strict liability for sale of a product:

### COURT'S INSTRUCTION NO. 20

"It is the law in Indiana that there is strict liability on the Seller of a Product where physical harm occurs to a user or a consumer where:

(1) One who sells any Product in a defective condition, unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer.

(a) the Seller is engaged in the business of selling such product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) applies although

(a) the Seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the Seller."

The Court further gave the following instruction regarding the Plaintiffs case:

### COURT'S INSTRUCTION NO. 19

"Plaintiffs, in order to prove their case, must show by a fair preponderance of all the evidence that:

1. Defendant designed or manufactured and sold a rubber cutting machine which when sold was in a defective condition unreasonably dangerous to ultimate users or consumers.

2. the rubber cutting machine was expected to and did reach the ultimate user or consumer without substantial change in the condition in which it was sold; and

3. the defective condition proximately caused the injuries to Plaintiff Martin L. Newton.

Although the Plaintiff has charged that the rubber cutting machine was defective in several ways, the Plaintiffs need prove only one such defective condition was the proximate cause of his injuries in order to recover.

Defendants have the burden of proving all of the elements of their defenses."

In reviewing the evidence and ruling upon a Motion On The Evidence under Federal Rule of Civil Procedure 50, it is the law in the Seventh Circuit that the Court looks to the State law to determine the standard governing decisions on such motions. *Kuziw v. Lake Engineering Co.*, 586 F.2d 33 (7th Cir. 1978); *Kudelka v. American Hoist & Derrick Co.*, 541 F.2d 651 (7th Cir. 1976); *Lorance v. Marion Power Shovel Co., Inc.* 520 F.2d 737 (7th Cir. 1975); *Johnson v. Baltimore & O. R. Co.*, (N.D.Ind.1974), 65 F.R.D. 661, *aff'd*, 528 F.2d 1313 (7th Cir. 1976).

■ The law in Indiana is that motions on the evidence may be granted only where there is a complete failure of proof, considering only the evidence and reasonable inferences therefrom favorable to the nonmoving party.

"The rule in Indiana with respect to motions pursuant to T.R. 50, for judgment on the evidence, is that such a motion may properly be granted only if there is no substantial evidence or reasonable inference derived therefrom supporting an essential element of the claim: a complete failure of proof. When considering a motion for judgment on the evidence, the Trial Court must consider only the evidence and reasonable inferences favorable to the non-moving party." *Ortho Pharmaceutical Corp. v. Chapman*, Ind.App., 388 N.E.2d 541 at 544 (1979).

"The motion must be denied 'where there is *any* evidence or legitimate inference therefrom tending to support at least one of the allegations. Where the evidence is such that the minds of reasonable men *might* differ, a directed verdict is improper, and the resolution of conflictive evidence is for the jury.'" (Original emphasis). *Vernon Fire & Casualty Ins. Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173, 179 (1976); *Ortho, supra*, at p. 544 (1976). In this case, therefore, the question is, viewing the evidence and all reasonable inferences from the evidence most favorably to Plaintiffs, whether there is a complete lack of evidence to support any one of Plaintiffs' contentions that the machine was defectively designed, or that Defendant failed to provide adequate instructions or warnings.

One primary claim was that the machine was defectively designed because Defendant designed it to use a photo-electric eye for automatic activation of the cutting function of the machine. The evidence established that the Defendant designed, manufactured and sold the rubber cutting machine in question, which was the third rubber cutting machine of its type designed, manufactured and sold to Goshen Rubber Co. by Defendant. Goshen Rubber Co. contacted the Defendant several years earlier and indicated that they wanted a rubber cutting machine to use in an automatic function on a continuous flow of rubber. The first machine was designed and manufactured for use with a cyclo-monitor activating device. The second machine was changed by Defendant to use a photo-electric cell system. This change was reflected on the design drawings by Defendant, Plaintiffs' Exhibit 5. Plaintiffs' Exhibit 16, a photograph of the second machine, established that this machine was designed for use with the photo-electric eye activating device. The third machine, which resulted in the injury, was ordered according to copies of the prints with the same design and a cover letter from Defendant acknowledging they were to provide the photo-cell package for the activating device for the machine.

The evidence in the record is undisputed that Defendant designed, manufactured and sold the rubber cutting machine in question and intended it to be used as a rubber cutting machine in an automatic cutting fashion with the photo-electric eye device. The evidence establishes that Defendant was engaged in the business of designing, manufacturing, and selling rubber cutting machines of various types, including automatic cutting machines. The testimony of Plaintiffs' experts, Raymond Brach and John Uhran, establishes that the machine was defective in its design and should not have been designed to use a photo-electric eye for an automatic activating device in the dusty environment. The testimony was that Defendant knew or had reason to foresee or anticipate that this automatic rubber cutting machine would be used in a dusty environment, due to the common practice of using soapstone or talc or other powdery substances to lubricate the uncured rubber. In the opinion of Brach and Uhran a machine to be used in such a dusty environment should not use a photo-electric eye beam for an automatic activating device. The facts establish that the Plaintiff, Martin L. Newton, was in the process of cleaning the machine, also a reasonably foreseeable necessity in any manufacturing process. Using an airhose he blew the dust out of the machine. The dust interrupted the eyebeam causing the machine to activate and to sever his thumb and first two fingers from his left hand.

Basically, the documents provided by the Defendant with its machine were an electrical schematic from Fawick, the component provider of the brake and clutch and electrical controls, and an electrical schematic drawn by Defendant referring to the photo-electric eye hook-up, plus a one page letter of Installation and Operation instructions by Defendant (Plaintiffs' Exhibit 6) and the Fawick installation manual.

Plaintiffs contended to the jury that these did not constitute either adequate operating instructions or adequate warnings. Both experts Brach and Uhran stated that there were inadequate instructions or warnings with this machine. The Fawick installation manual in fact contained no operat-

ing instructions for the machine operator. The jury could reasonably have found that no operator instructions whatsoever were provided for this machine. In addition, the jury had evidence to justify it in finding that the "Installations and Operations Instructions" from Defendant, even including the two electrical schematics and the Fawick manual were inadequate, because detailed operating instructions were not included. Plaintiff Martin L. Newton, Carroll Hobson and Jack Thompson all testified that there were no operating instructions for the machine. Carroll Hobson indicated that he had never seen any written operating instructions for the machine. Martin L. Newton testified that he was never given any written operating instructions. There were no operating instructions on the machine and no warnings on the machine. It would clearly be a permissible finding under this evidence for the jury to conclude that inadequate operating instructions and inadequate warnings were provided by Defendant for this machine. Further, there was evidence that no instructions or warnings were given to interconnect the cutting machine to related equipment with micro safety switches and no power on monitor light was provided on the controls.

The evidence also supports the finding by the jury that the cutting machine was expected to and did reach the user or consumer without substantial change in the condition in which it was sold. The invoice indicates that the rubber cutting machine was sold and delivered to Goshen Rubber Company as a package. Although the photo-electric eyes were not attached to the machine during shipping, the instructions and electrical schematics were provided to the company for connection of the photo-electric eyes into the machine upon its receipt.

Upon receipt of the unit, according to witness Jack Thompson, the machine was wired up according to the instructions and the electrical schematic. The photo-electric eyes were assembled and wired into the pre-wired control panel unit and the machine was operated according to its intended operation from then on until the date of the injury. Thompson and Hobson testified there was no change in the machine's condition after its receipt and installation according to the instructions. The wiring was examined by Plaintiffs' experts and the machine operated as it was intended and according to the drawings and wiring schematics.

Both Thompson and Hobson testified there were no changes in its condition or its operation prior to the injuries to Martin L. Newton. Although a few minor additions were made to the machine, such as a counter and conveyor speed control, such additions did not alter the operation of the machine as it was received from Defendant. Based upon their testimony it was a permissible finding of fact for the jury to determine that there was no substantial change in the condition of the machine which it was sold. Basically it was clear that the Defendant intended the machine to be used with a photo-electric eye system which they provided and which was installed according to their prints, installation instructions and electrical schematics.

In the face of all the evidence presented by the Plaintiffs, at the conclusion of Plaintiffs' case Defendant moved for a Judgment for a Directed Verdict. The Court denied such motion, thus concluding Plaintiffs' had established a prima facie case. At that point in the case the burden was upon the Defendant to produce evidence that the machine was not in a defective condition unreasonably dangerous to Plaintiff or to otherwise attempt to establish a defense. The Defendant presented virtually no evidence to refute all of the evidence presented by Plaintiffs that the machine was in a defective condition unreasonably dangerous to Plaintiff Martin L. Newton, that the machine was expected to reach and did reach Goshen Rubber Company without substantial change in its condition and was so used and that its defective condition was a proximate cause of the injury to Plaintiff Martin L. Newton. Under Instruction No. 20 it was only incumbent upon the Plaintiff to prove that any one of the above conditions, the defective activating device, inadequate operating instructions or failure to

warn were a proximate cause of Martin L. Newton's injuries.

Plaintiff established by its evidence that Defendant sold the rubber cutting machine, that it was defectively designed by Defendant and that there were inadequate instructions or warnings given with the machine. This is a sufficient basis for finding in Plaintiffs' favor under the law of Indiana. *Ortho, supra; Ayr-Way Stores, Inc. v. Chitwood*, 261 Ind. 86, 300 N.E.2d 335 (1973).

 A manufacturer may be liable for providing a defective product where a manufacturer fails to discharge a duty to the user to warn or where warnings are given inadequately. On the question of warnings, the question is whether the warning given, if any, is reasonable under the circumstances. *Ortho*, supra. A manufacturer may be liable for providing a defective product where the manufacturer fails to discharge a duty to the user to warn or instruct with respect to potential dangers in the use of a product. *Nissen Trampoline Co. v. Terre Haute First National Bank*, Ind.App., 332 N.E. 820 (1975), reversed on other grounds, Ind., 358 N.E.2d 974.

 A manufacturer is charged with a duty to anticipate what the environment will be like in which the product is to be used and what the foreseeable risks of such use are. *Huff v. White Motor Corp.*, 565 F.2d 104 (7th Cir. 1979). The questions of feasibility of safety devices and the foreseeability of harm are questions for the triers of fact. *Bemis Co., Inc. v. Rubush*, Ind. App., 401 N.E.2d 48 (1980); *Gilbert v. Stone City Construction Company, Inc.*, Ind.App., 357 N.E.2d 738 (1976).

 Plaintiff was not required to prove that the defect or defects attributable to Defendant were the sole cause of the injury; it is sufficient if the defect or defects, combined with other reasonable or foreseeable intervening or independent forces, constituted a proximate cause of the injuries. "Proximate cause is generally a question for the trier of fact." *Ortho*, supra. at p. 555. Basically, Plaintiffs' case as presented by its evidence and its submission to the jury was that the machine was defectively designed by Defendant to use a photo-electric eye as the activating device in automatic operation. This fact was established by Defendant's own drawings, installation instructions and electrical schematics provided to the purchaser. In addition, it was clear in this case that the Defendant provided no operating instructions to Goshen Rubber Company or to the Plaintiff Martin L. Newton and that the use of the photo-electric eye system, the failure to provide adequate operating instructions and the failure to provide any warnings on the machine, such as a monitor light for power on, were each proximate causes of the injury. The evidence also established that it was a known and reasonably foreseeable risk that in this dusty environment a cloud of dust could accidentally trip the rubber cutting machine.

It is basically the Defendant's argument, which it made to the jury that it had no part in the defective design or condition of this machine which proximately caused the injuries to Plaintiff Martin L. Newton. It is the Defendant's argument that although it designed the machine provided to Goshen Rubber Company for use with a photo-electric eye activating device, made drawings reflecting the use of a photo-electric device to automatically activate the machine and knew that the machine was intended to be used to automatically and continuously cut uncured rubber extrusion pieces in a dusty environment that it was not defective to provide the machine with a photo-electric eye system. That was an issue of fact for the jury to decide and the jury decided, based upon all of the evidence presented that it was a defective design to provide such a machine with a photo-electric eye system.

Defendant attempted to convince the jury and the Court that it did not have any knowledge or any legal duty to the Plaintiff in this action under the circumstances in this case. It cites as its primary legal authority for this proposition the decision in *Shanks v. A. F. E. Industries, Inc.*, Ind., 416 N.E.2d 833 (1981). A careful examination

and reading of the *Shanks* decision establishes that the facts in that particular case are different from the circumstances present in this case.

In *Shanks*, the trial court granted defendants Motion for A Directed Verdict at the close of plaintiff's case. On appeal, the Indiana Court of Appeals reversed, 403 N.E.2d 849. On review by the Supreme Court of Indiana the facts were noted as follows:

Plaintiff was a high school student who sued the manufacturer of an automatic grain dryer to recover for personal injuries suffered while he was repairing an elevator leg which was connected to the grain dryer.

The plaintiff's evidence established that a firm engaged in buying and selling grain purchased the grain dryer from the defendant in 1967. It was purchased by a part-owner of that firm through a distributor. The part-owner picked it up and transported it to the purchasing firm. It had an owner's manual along with it. The dryer could be hooked up, as the manual stated, to be used with a variety of auxiliary equipment.

At first it was used manually as part of an old elevator. About two years later, the purchaser decided to build "an entirely new grain elevator complex." He decided on an automatic drying system. Four independent firms were requested to submit plans and designs for such a complex. One of the independent firms designed it and built the complex, incorporating the grain dryer. The electrical wiring for the complex was designed and installed by a second independent electrical firm. As designed and built the entire system was automatically and electrically operated. It utilized a newly designed central control shed which had controls operating all of the various machinery in the complex, including the grain dryer, auger and elevator leg.

The Defendant manufacturer of the grain dryer did not participate at all in the design or construction of the system. During repairs on the elevator leg, the plaintiff was injured when the complex activated automatically.

In *Shanks* plaintiff's contention was solely that there was no safety device, by the use of a bell or light, to indicate that the grain dryer was going to be activated, in order to give warning to a worker on the elevator. The defendant manufacturer of the dryer contended that the dryer itself was not defective, but that others manufactured the entire complex. Basically, the Court concluded that there was no evidence to establish that the manufacturer failed to give adequate warnings of the operations of the dryer which proximately caused plaintiff's injuries and that the owner of the machine knew how the entire complex was to work. The court therefore concurred with the Court of Appeals that there was no evidence presented concerning the inadequacy of instruction or warnings in that case.

However, it reversed the Court of Appeals regarding the "duty to equip the dryer with warning devices." It held, and only held, that it would be speculative to allow the jury to consider whether the manufacturer should have incorporated a light or bell into the grain dryer in the complex operation where the owner and the other designers of the actual complex and its control system were someone other than the manufacturer of the machine. It found under that evidence that *Shanks* had no part in the design of the complex, had no knowledge or control over the decisions concerning the complex and no way to foresee what instructions or warnings would be necessary for the entire complex and the dryer in that system. Further, it concluded that under all of the evidence, although the owner had given instructions to shut everything off, a switch to accomplish that had not been turned off and it allowed the dryer to continue to function. In sum, the Supreme Court of Indiana concluded that the facts revealed that the development was unforeseeable to the manufacturer and, therefore, the lack of warning device was eliminated as a possible proximate cause contributing to the injuries to the plaintiff and the directed verdict was affirmed.

In this case, the manufacturer defendant designed the machine in question to use a photo-electric eye activating device for an automatic function in a dusty environment. There was testimony and evidence from which the jury reasonably could find that the Defendant in fact knew that the machine was to be used in a dusty environment or from which it could find that it was reasonably foreseeable that it would be used in a dusty environment.

The major distinction between these two cases is that in this case it was Plaintiff's major theory that it was defective to provide a rubber cutting machine for use in that environment with a photo-electric eye activating device. In the *Shanks* case, it was plaintiff's *sole* theory that it was a defective design for the manufacturer not to include a warning light or bell system with its grain dryer. The difference is that Plaintiffs in this case contend that the Defendant in fact, with knowledge of the conditions of the machine's use chose to design and provide such machine to use a photo-electric eye system. This is an affirmative defect in the machine design, not merely an absence of a safety device or safety warning or instruction.

■ Under the evidence presented by the Plaintiffs in this case, there was sufficient evidence for a jury to find that the machine was defectively designed by Defendant and that the defective design, i. e. use of the photo-electric activating device under the dusty environment and other conditions known to Defendant, was a design defect which resulted in Plaintiff's injuries. Furthermore, the evidence in this case supports a jury finding that the Defendant had failed to warn or provide operating instructions. In fact, no operating instructions were provided by the Defendant to either Goshen Rubber Company or to the Plaintiff and there was a complete absence of any warning given by the Defendant to either Goshen Rubber Company or to the Plaintiff concerning the uses of the machine in question.

Defendant asserts that strict liability under Section 402A of Restatement of Torts does not apply to this case. The doctrine of strict liability does apply to this case. The case of *Lukowski v. Vecta Educational Corp.*, Ind.App., 401 N.E.2d 781 (1970), has no similarity to this case. In that case, the Trial Court granted a summary judgment on the evidence in favor of the defendants, an architect and a contractor. The plaintiff fell backwards off the top row of bleachers which had not been provided with any back railings due to incomplete construction. In that case the Court reviewed the evidence and found that there was no evidence to show that Vecta marketed a defective product. The evidence established that the bleachers had only been partially finished at the time and Vecta had not "delivered" the bleachers to the school yet. Vecta had warned the school not to use the bleachers and had instructed the school to block off the top five rows of bleachers. Instead, the school elected to use the bleachers in their incomplete condition and without the approval of Vecta.

In this case, the evidence is beyond dispute that the Defendant provided the machine as one package unit to the employer, that it was installed according to the instructions from the Defendant and operated as it was intended by the Defendant. There is absolutely no dispute in this case that the machine was delivered to Goshen Rubber Company. Defendant argues that because Goshen Rubber Company undertook to provide the guards on this machine it cannot be liable. Such is an argument on a question of fact for the jury.

The Plaintiff stipulated in the Pre-Trial Order that it was not the theory of liability by Plaintiffs that Defendant had failed to provide safety guards or adequate safety guards for the machine. At most Plaintiffs presented evidence that Defendant should have provided micro-safety switches in its design for interconnection of the machine with the conveyors and guards provided by Goshen Rubber Company. Defendant made its argument to the jury that it was the failure to provide guards that was the sole proximate cause of the injuries. However, the Court instructed in Instruction No. 27

that the jury could determine that there were changes in the product which would make it unsafe and if those were not reasonably foreseeable the manufacturer was not responsible for the injuries. In the Court's Instruction No. 25 the jury was instructed that it could find if it found that Goshen Rubber Company provided inadequate guards and that those inadequate guards were the sole proximate cause of the injuries, then they should return a verdict for Defendant. The jury was also instructed that if they found from the evidence that Defendant only provided a component part of the complex they were to find that the responsibility for warning devices and instructions would be Goshen Rubber Company's and not the Defendant's. Taking those instructions into account with the Court's Instruction No. 14 on proximate cause, and Court's Instruction No. 16 on concurrent acts, the issue was clearly presented for the jury to determine whether as a matter of fact it felt that the guarding by Goshen Rubber Company was inadequate and was the sole proximate cause or whether there were concurrent causes of this accident, namely the design defect in the machine designed by the Defendant together with the acts of Goshen Rubber Company.

There was no substantial change in the products condition.

Defendant relies upon a portion of Comment "P" of Section 402a of the Re-statement of Torts 2d. However, Defendant has cited only portions of that Comment. The Comment also states:

"It seems reasonably clear that the mere fact that the product is to undergo processing, or other substantial change, will not in all cases relieve the seller of liability under the rule stated in this Section. If, for example, raw coffee beans are sold to a buyer who roasts and packs them for sale to the ultimate consumer, it cannot be supposed that the seller will be relieved of all liability when the raw beans are contaminated with arsenic, or some other poison. Likewise, the seller of an automobile with a defective steering gear which breaks and injures the driver, can scarely expect to be relieved of the responsibility by reason of the fact that the car is sold to a dealer who is expected to 'service' it, adjust the brakes, mount and inflate the tires, and the like, before it is ready for use."

The evidence in this case clearly establishes that there was no *substantial* change in the condition of the machine that caused the injuries to Plaintiff. The Defendant provided the machine for installation according to its instructions and schematics. The testimony of Jack Thompson and of Carroll Hobson established that the machine was in fact installed according to the instructions and the schematics from the Defendant. It operated accordingly. The defect was the design of the machine to use a photo-electric eye system activating device, as well as inadequate instructions and warnings. Plaintiffs' evidence established that there were additions to the machine which did not change or alter the operation of the machine itself. This was testified to by both Thompson and Hobson. Both of the Plaintiffs' experts testified that the machine operated as it appeared it was intended to be operated from the electrical schematics.

The case of *Willeford v. Mayrath Co.,* (1972), 7 Ill.App.3d 357, 287 N.E.2d 502 also is not similar on the facts. In that case claim was brought against the manufacturer of a farm elevator which sold it to a dealer in parts. The dealer took the parts from his company's stock and re-sold them, after assembly, to a purchaser. Plaintiff was injured while using the elevator at the purchaser's premises.

The machine, as ordered by the purchaser from the dealer, did not include a safety guard or shield although that had been provided by the manufacturer to the dealer. The Court granted judgment for the manufacturer on both negligence or strict liability, holding there was no evidence to establish that the manufacturer had done anything to proximately cause the injury to Plaintiff and that there was no defect which remained under the control of the Defendant. That decision is different from

the circumstances here, where this machine was provided with the photo-electric activating device, and thus Defendant affirmatively provided a defectively designed product. The Defendant provided the machine to use the photo-electric device, made the drawings for that machine, sold that machine and advertised it as a machine using a photo-electric activating device, knew or had reason to know about the dusty environment in which it would be used. It chose to sell such a machine to Goshen Rubber Company for use by it and its employees, including the Plaintiff employees, yet failed to provide adequate operating instructions or warnings with the machine.

The decision in *Schipper v. Levitt & Sons, Inc.,* (1964), 44 N.J. 70, 207 A.2d 314 also does not aid Defendant. In that case the Plaintiff, a minor, had been injured by scalding from excessively hot water from a hot water tap. Suit was brought against the Defendant builder and seller of the mass produced house containing the tap. The question presented for decision was whether Plaintiffs had any claim against the manufacturer of the heating unit. It was held that the manufacturer was not liable under breach of warranty or strict liability theories where the manufacturer simply sold and delivered the units which the builder ordered per its specifications. Unlike this case, where the rubber cutting machine was defective in design, there was no contention of design or manufacturing defect in the water heating unit itself. The defect arose from its installation without a mixing valve. This was not installed, even though the manufacturer strongly recommended use of a mixing valve. It was common in the industry that such water heaters were not provided with standard equipment mixing valves. Mixing valves were normally applied at the installation site, and required sweat fitting and soldering. Thus, the builder disregarded the manufacturer's recommendation and the defect arose from faulty installation without a mixing valve. The Court found there was in fact no action on the part of the manufacturer which proximately caused the injury.

The decision in *Antcliff v. State Emp. Credit Union* (1980), 95 Mich.App. 224, 290 N.W.2d 420 also does not support Defendant's argument. In that case Plaintiff was injured when a scaffold fell to the ground. Plaintiff sued the manufacturer of the scaffold. The scaffold was suspended from wooden beams called outriggers at the time of the accident. The outriggers were counter-weighted by sandbags. The scaffold pulled loose from the counter-weights at Plaintiff's end. It was Plaintiff's claim that the manufacturer of the scaffold had breached its duty to provide metal outriggers and had failed to instruct in the proper rigging techniques for scaffolds. However, the evidence showed that outriggers were not a device which could be integrated into the scaffold itself. There were varying unique uses for the scaffold. The proper suspension devices for use varied with the circumstances of its use. The Court found it was not the scaffold which failed, but a separate device which was not furnished by the manufacturer and which was a mere accessory to the scaffold. Thus the scaffold was simply a part of the system in question and a scaffold can be secured by many devices, only one of which are metal outriggers. It was not customary in the business of this manufacturer to provide such auxiliary equipment. Again, there was no contention that there was any design defect in the scaffold as it was furnished, but that there was an omission of instructions or auxiliary equipment.

In *Jordan v. Whiting Corporation* (1973), 49 Mich.App. 481, 212 N.W.3d 324, a wrongful death action was brought based upon negligence and breach of implied warranty. The decedent was electrocuted while repairing the crane. However, Defendant had nothing to do with the manufacturer of the crane itself or the installation of the lockout box. It simply provided components ordered by the crane manufacturer. The Court found that there was no liability on the part of Whiting for failure to provide warnings or failure to ground the box because they did not sell, design or install the crane. Also, the Court found there was no evidence of proximate causation.

In *Leonard v. Albany Machine & Supply Co.*, (La.App.1976), 339 So.2d 458, Plaintiff sued Albany as a manufacturer of a lumber trimmer. The Albany trimmer machine was inserted into a line of conveyors. Problems arose when the trimmer began to throw lumber. At that point the employer built and installed a shield. Plaintiff obtained a verdict against the manufacturer of the trimmer for failure to shield the blades. The Court reversed holding it was error to find a defectively designed trimmer machine. The evidence established that all circular saws throw cutoffs of lumber. The manufacturer never sold a shield as a component part of any trimmer manufactured by it, where shielding was left to the purchaser unless Albany designed the entire mill production process. The mill owner never consulted with Albany about the design of shields and never requested any advice from the trimmer manufacturer regarding it. Therefore, the Court found there was no duty on the part of the trimmer manufacturer to protect the decedent against that risk. In that particular case it was the responsibility of the mill owner and not the responsibility of Albany to shield the machine. The custom was that it would be shielded after installation into the assembly line. In Newton's case, however, the activating photo-electric eye was designed and provided as part of the machine. This defect caused the injuries.

In *White v. Clark Equipment Co.*, (1977), 262 Ark. 158, 553 S.W.2d 280, an employer ordered a forklift without any overhead guard. It was ordered in that condition because it had to enter a trailer with a low ceiling. Presumably that could not be done with an overhead guard on it. The employer purchaser specified the machine in that fashion. Therefore, the Court found there was no factual basis for a claim against the manufacturer or the distributor.

In *Thornhill v. Black, Sivalls & Bryson, Inc.*, (La.App.1980), 385 So.2d 336, Defendant was the manufacturer and seller of an auger conveyor system for a grain storage complex. The Plaintiff inadvertently stepped into the trough. The Plaintiff was aware the auger was in operation and was aware of the potential source of injury. The manufacturer did not install the system or make the modifications consisting of access openings provided by the purchaser. The manufacturer sold the auger solely as part of the system and modifications to the auger cover were made by the purchaser. The Court found that this meant the purchaser had no control over the modification and the danger was obvious and there was no duty to warn Plaintiff about it. Nothing in the evidence in Newton's case reveals any modification to the rubber cutting machine that related to or caused the injuries to Newton.

The careful reading of each of the decisions summarized above reveals that they are not authority for granting the motion of Defendant G. F. Goodman & Son, Inc. In nearly every case a primary defendant, usually one standing in the same position as G. F. Goodman & Son, Inc., in this case, had either previously settled a claim against it or had had a verdict rendered against it after trial. Thus, the decisions in question usually pertain to a tenuous evidentiary claim against a remote defendant. That is not the set of circumstances presented by the evidence of Plaintiffs against G. F. Goodman & Son, Inc.

The evidence in the record of this cause establishes an evidentiary basis for the finding of liability against Defendant under the theory of strict liability in tort. Such a finding has been rendered by a Jury on the basis of finding a defective machine designed to utilize a defective activating device. The photo-electric sensors should not have been used in this dusty environment and that fact is established not only by the testimony of Plaintiffs' witnesses, but the testimony of G. F. Goodman, Jr. and William Rumble. Defendant acknowledged that a cloud of dust could accidentally activate the machine. Nevertheless, it designed, manufactured and sold a machine utilizing the defective triggering device mechanism. In addition, the evidence establishes a failure to provide warnings of such potential dangers or adequate installation or operation instructions.

The Defendant's Motion is in all things DENIED.