Richard E. HENKEL and Christy M. Henkel, as Guardians For Richard E. Henkel, Jr., a Minor; Richard E. Henkel, an Individual; and Christy M. Henkel, an Individual, Appellants,

v.

R AND S BOTTLING COMPANY, an Iowa Corporation, Appellee.

No. 65650.

Supreme Court of Iowa.

Aug. 25, 1982.

Thomas F. Bell and Thomas J. Vilsack of Thomas F. Bell Law Office, and Michael A. Riepe, Mount Pleasant, for appellants.

Robert V. P. Waterman and Charles E. Miller of Lane & Waterman, Davenport, and Edward W. Dailey of Edward W. Dailey Law Offices, Burlington, for appellee.

SCHULTZ, Justice.

Plaintiffs, Richard E. and Christy M. Henkel, suing individually and on behalf of their one-year-old son (Richard, Jr.), appeal from the verdict and judgment in a products liability action against defendant, R and S Bottling Company. Plaintiffs' claim for damages for an injury to their son—occasioned when an unopened bottle containing a carbonated beverage was broken, allegedly causing a fragment of glass to be propelled into the child's eye—was denied. Plaintiffs assert three assignments of error. We find merit in one of them and reverse and remand for a new trial.

In January 1979 Mrs. Verda M. Henkel, the child's paternal grandmother, purchased an eight-pack of sixteen-ounce, returnable bottles of 7-Up at a grocery store in Mt. Pleasant. The 7-Up had been bottled and distributed by defendant, an Iowa corporation located in Burlington. Mrs. Henkel took the bottles to her home and placed them in her dining room on the floor near a refrigerator.

On February 9 she was caring for the child in her home. At the time, the child was almost a year old; he could crawl and stand, but he could not walk. While Mrs. Henkel was in the kitchen preparing lunch, she became aware that the child was playing with the carton of 7-Up in the adjoining dining room. After a minute or two, the child apparently tipped the eight-pack over.

One of the bottles broke, and the force of the carbonated beverage propelled glass fragments for some distance. One of these fragments struck the child's right eye, causing substantial and permanent damage.

Defendant does not design or manufacture beverage bottles; as a distributor, it fills the bottles, after adding carbon dioxide to carbonate the liquid, and transports them to retail outlets. It reclaims returnable bottles and washes and inspects them. The inspection is done visually, electronically, and by a pressure process designed to cause defective bottles to break.

Plaintiffs commenced a products liability action against defendant in the Henry District Court. Their action was premised on the alternative claims of negligence and strict liability. At the close of plaintiffs' evidence, defendant moved for a directed verdict on plaintiffs' separate counts of negligence in both bottling and distributing the product. The trial court sustained defendant's motion, and the case was submitted to the jury under the theory of strict liability. Plaintiffs' claim for damages was denied, and plaintiffs appealed. They contend the trial court erred in: (1) sustaining defendant's motion for a directed verdict; (2) instructing the jury on misuse of a product; and (3) refusing to admit into evidence as an exhibit a report by the United States Consumer Product Safety Commission on the hazards of carbonated-beverage bottles.

I. *Negligence.* Plaintiffs assert that there is sufficient evidence in the record to engender a jury question on the issues of whether defendant was negligent in either failing to provide a warning of the inherently dangerous nature of its product or failing to adopt a proper design for the product. Plaintiffs therefore contend that the trial court erred in sustaining defendant's motion for a directed verdict.

In ruling on a motion for a directed verdict, the trial court must view the evidence "in the light most favorable to the party against whom the motion was made." Iowa R.App.P. 14(f)(2). Every legitimate inference that reasonably may be deduced from the evidence must be afforded the

nonmoving party; and if reasonable minds can differ as to how the issue should be resolved, a jury question is engendered. *Schiltz v. Cullen-Schiltz & Associates, Inc.,* 228 N.W.2d 10, 17 (Iowa 1975). Generally, questions of negligence and proximate cause are for the jury; only in exceptional cases may they be decided as a matter of law. Iowa R.App.P. 14(f)(10). When substantial evidence has been presented in support of each element of a claim, a motion for a directed verdict must be overruled. *Oak Leaf Country Club, Inc. v. Wilson,* 257 N.W.2d 739, 744 (Iowa 1977). With these principles in mind, we turn to the merits of this issue.

A. *Warning.* Plaintiffs contend that there is substantial evidence in the record to support their claim that defendant negligently failed to provide a warning of its product's inherently dangerous explosive quality. They maintain that defendant knew of this characteristic of an unopened bottle of 7-Up and should have foreseen misuse of the product by children. Plaintiffs therefore assert that defendant should have warned consumers of the danger and instructed them to avoid conditions giving rise to it.

■ We have recognized that the duty of care placed on a supplier of a product may include an obligation to warn of danger caused by use of the product. In *West v. Broderick & Bascom Rope Co.,* 197 N.W.2d 202, 209 (Iowa 1972), we adopted *Restatement (Second) of Torts* § 388 (1965), which provides:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be *endangered by its probable use,* for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) *knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied,* and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) *fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.*

(Emphasis added). Whether a warning is required is to be determined by standards of reasonable care. *Cooley v. Quick Supply Co.,* 221 N.W.2d 763, 771 (Iowa 1974). In *West* we enumerated factors for use in determining whether reasonable care requires a warning.

Among them are the likelihood or unlikelihood that harm will occur if the vendee does not pass on the warning to the ultimate user, the trivial or substantial nature of the probable harm, the probability or improbability that the particular vendee will pass on the warning, and the ease or burden of the giving of warning by the manufacturer to the ultimate user.

197 N.W.2d at 211.

■ A supplier of goods, therefore, is not required to provide a warning of danger when the reasonable probability of injury is remote, slight, or inconsequential. *Restatement* section 388(a) requires a warning only when the supplier knows or should know the product "is or is *likely* to be dangerous." (Emphasis added). "Likely" is defined as meaning "[p]robable" or "[i]n all probability." *Black's Law Dictionary* 834 (5th ed. 1979). Thus, for a jury question to be engendered on the issue of whether a warning is required, there must be substantial evidence that the supplier in all probability knew, or had reason to know, the product was dangerous or that there was a likelihood of danger.

The record reveals that some degree of danger attends the breakage of an unopened carbonated-beverage bottle. When the bottle breaks, the carbon dioxide that is combined with the beverage during the carbonation process is rapidly released, producing an effect that is explosive-like in nature and may propel fragments of glass created by the breakage. Defendant was obviously aware that some danger of flying glass

exists when bottles break, since bottles are tested in three ways—including a high-pressure technique—and workers are protected by goggles and shields on the machinery.

Carbonated beverages in returnable bottles, such as the one in this case, are popularly consumed in this nation. An expert witness estimated that ten billion bottles are manufactured annually. Normally, these bottles break because of structural defects or impact with another object. Expert witnesses for both parties agreed that the bottle at issue broke because of impact with another object.

This case is different from those in which there is a duty to give adequate warning or provide instructions for use because the product inside a container is flammable, caustic, or highly explosive. *See, e.g., Shuput v. Heublein, Inc.*, 511 F.2d 1104, 1106 (10th Cir. 1975) (jury question on duty to warn generated in strict liability case when a plastic bottlestopper spontaneously ejected at high velocity because of generally unknown explosive quality of champagne); *Kapp v. E. I. Du Pont De Nemours & Co.*, 57 F.Supp. 32, 38–39 (E.D.Mich.1944) (fact question on duty to warn not engendered when bottle of ammonia exploded due to exposure to heat); *Burke v. Almaden Vineyards, Inc.*, 86 Cal.App.3d 768, 773, 150 Cal. Rptr. 419, 422 (1978) (jury question presented in strict liability case based on lack of warning when eye injury was caused by cork popping from bottle because of generally unknown explosive propensity of champagne); *Gall v. Union Ice Co.*, 108 Cal. App.2d 303, 310, 239 P.2d 48, 55 (1951) (jury question on duty to warn presented when drums containing sulphuric acid, which had tendency to become explosive if not kept cool, exploded injuring plaintiff); *Tucci v. Bossert*, 53 A.D.2d 291, 294, 385 N.Y.S.2d 328, 330 (1976) (jury question engendered on failure to warn of latent explosive qualities of can of Drano, which exploded when children poured water into it); *see also* Annot., 81 A.L.R.2d 229, 265–86 (1962); 31 Am.Jur.2d *Explosions and Explosives* § 74 (1967).

Here, it has not been shown that beverage bottles of the type at issue possess the degree of danger necessary to engender a jury question on the duty to warn. Moreover, plaintiffs' own evidence establishes the obviousness of the danger of injury from scattering fragments caused by impact breakage of glass objects. The authority we have been able to find is contrary to plaintiffs' position. *See Kosters v. Seven-Up Co.*, 595 F.2d 347, 353–54 (6th Cir. 1979) (party injured by glass fragments from 7-Up bottle that broke upon impact from fall; court rejected strict liability claim for failure to warn of inherent danger, indicating doctrine is inapplicable to carbonated-beverage bottles).

■ Since the evidence was insufficient to engender a jury question on the duty to warn, the trial court correctly granted defendant's motion for a directed verdict on this ground.

B. *Design.* Plaintiffs argue that the evidence was sufficient to present a jury question on their claim that defendant failed to adopt a safe plan or design for its bottles.

■ When product design is relied on as a ground of negligence, it must be shown that the manufacturer or producer of the product acted unreasonably in designing the product. *Aller v. Rodgers Machinery Mfg., Co.*, 268 N.W.2d 830, 835 (Iowa 1978). There was no evidence presented at trial that the bottles defendant uses for 7-Up are improper containers or created unreasonable hazards. An executive of defendant, in testifying, did admit that defendant had not investigated the use of either a surlyn-coated bottle or an authorized plastic-shielded bottle as an alternative container. Such failure to investigate does not help plaintiffs, however; they have not shown that defendant had a duty to investigate.

The evidence presented by plaintiffs was insufficient to generate a jury question on the issue of product design. The trial court, therefore, did not err in granting defendant's motion to dismiss on this ground.

II. *Instructions.* The case was submitted on a strict liability theory. The jury was instructed that the elements essential to liability were:

1) That the defendant sold the product.

2) That the defendant was engaged in the business of selling such product.

3) That the product was in a defective condition.

4) That the defective condition was unreasonably dangerous to the plaintiff in a reasonably foreseeable use.

5) That the product was expected to and did reach the plaintiff without substantial change in condition; that is, that the defect existed at the time of the sale.

6) That said defect was a proximate cause of personal injury or property damage suffered by plaintiff.

Plaintiffs objected to Instructions 12, 14, and 15, which respectively defined "defective" product, instructed that plaintiff had the burden to establish that the product reached them without substantial change in condition from the time defendant sold it, and specified the circumstances under which a warning is required. The trial court overruled plaintiffs' objections. They contend the trial court erred in so doing.

█ In division I we held that the evidence was insufficient to generate a jury question on the issue of the duty to warn. For this same reason, we conclude that any error in Instruction 15 was harmless.

Plaintiffs contend that even when there is evidence of misuse of a product in a strict liability case, a plaintiff can prove that a product is defective if the misuse was foreseeable by the defendant. They maintain that Instructions 12 and 14 are erroneous because they fail to instruct the jury on reasonable misuse.

As Instruction No. 12, the trial court submitted then-current *IA Iowa Uniform Jury Instructions Ann.* 24.3 (1975) (amended 1980), which provided:

A product is defective if it fails to perform reasonably, adequately, and safely in the normal, anticipated, or specified use to which the seller intends it be put.

There is no duty on a manufacturer or seller to furnish a product that will not wear out, and product failure only by reason of natural deterioration resulting from use and lapse of time does not establish that the product was defective.

When a failure of a product manifests itself only as a result of misuse of the product, it is not in a defective condition under this rule of law.

The burden is upon the plaintiff to establish that the product was in fact in a defective condition for the use intended or for a use reasonably foreseeable by the defendant.

Without detailing reasons, plaintiffs objected and asked that the third paragraph be deleted and the following included in its stead: "Misuse of a product may be foreseeable."

As Instruction No. 14 the trial court submitted *IA Iowa Uniform Jury Instructions Ann.* 24.5 (1975), which is virtually identical to current Uniform Instruction 24.5. Instruction No. 14 provided:

The plaintiff must establish that the product was expected to and did reach him without substantial change in condition from the time it was sold by the defendant; that is, that the defect existed at the time of sale. Safe condition and freedom from defect at the time of sale does include proper packaging and other precautions required to permit the product to remain safe for a normal length of time, when handled in a normal manner. A seller is not responsible if he delivers the product in a safe condition and subsequent mishandling or the [sic] causes beyond the seller's control render the product defective.

Plaintiffs objected to the last sentence of this instruction, asking that it be deleted "for the reason that the instruction as drafted does not take into consideration that misuse or mishandling might be foreseeable, ... in which event, responsibility may be triggered and it therefore misstates the law."

█ The objections to the instructions are certainly not models of clarity or speci-

ficity. The standard, however, is whether the exception taken alerted the trial court to the error. *Pose v. Roosevelt Hotel Co.*, 208 N.W.2d 19, 25 (Iowa 1973); Iowa R.Civ.P. 196. We conclude that plaintiffs' objections were sufficient to alert the court to its claims concerning foreseeable misuse.

In *Hughes v. Magic Chef, Inc.*, 288 N.W.2d 542, 546 (Iowa 1980), this court held that "misuse" would no longer be treated as an affirmative defense in a products liability action; instead, it is to be treated in connection with the plaintiff's burden to prove that the product was (1) defective and (2) the cause of the injury. A product is defective if it is "unreasonably dangerous in a reasonably foreseeable use." *Id.* Consequently, if the misuse of the product that causes the product to become dangerous is not reasonably foreseeable, the product is not defective.

Plaintiffs claim that in situations when misuse of the product is foreseeable by the producer, a consumer may prove the product is defective despite the misuse. We agree; however, the producer need only reasonably foresee or anticipate misuse. In *Hughes* we said:

> [I]n some situations negligent use of a product by a consumer is reasonably foreseeable by the producer and therefore is not 'misuse' for liability purposes . . . .
>
> . . . .
>
> If the ordinary user would reasonably be aware that use of a product in a certain way is dangerous, use of the product in that manner is less foreseeable by the producer than a use to which danger is not normally ascribed. But the ordinary user's awareness that use of the product in a certain manner is dangerous does not conclusively establish that such use is not reasonably foreseeable, for the defendant may in a given case reasonably foresee that a given product will be used by persons such as children who do not possess the knowledge of the ordinary user.

*Id.* at 547 *and authorities cited therein* (citations omitted). Stated otherwise, a plaintiff seeking to impose liability on a producer must show that he or she was damaged through a reasonably foreseeable use, which may include misuse by the plaintiff if such misuse is reasonably foreseeable by the defendant. 63 Am.Jur. *Products Liability* § 136 (1972); 72 C.J.S. Supp. *Products Liability* § 47 (1975). We believe that "reasonably foreseeable use" is similar to "reasonably anticipated conduct," which is defined as "conduct which would be expected of an ordinary reasonably prudent person who is likely to use the product in the same or similar circumstances." *Uniform Products Liability Act*, § 102(G) (1979). Almost any kind of misuse is foreseeable; a soda bottle will be used for a hammer, someone will attempt to drive a land vehicle on water, or someone will pour perfume over a lit candle in order to scent it. Such activities do not constitute reasonably foreseeable uses, however. *Id.*, Analysis. While a producer can be expected to guard against a misuse if it may be reasonably anticipated, the producer cannot be charged with responsibility to guard against a consumer activity that may not be reasonably anticipated. Thus, when an individual took a sump pump out of the sump, plugged it into an electrical outlet, and then picked it up and held it while standing in water, resulting in death by electrocution, it was held that the deceased used the pump in a manner not reasonably anticipated by the manufacturer and death was caused by misuse rather than a defect. *Keener v. Dayton Electric Manufacturing Co.*, 445 S.W.2d 362, 366 (Mo.1969).

A standard of ordinary reasonableness cannot be imposed on the consumer's use, however, since contributory negligence is not a defense to a strict liability tort. *See Hughes*, 288 N.W.2d at 547. The standard of reasonableness imposed concerns the producer's anticipation as to the manner in which the product may be used. *See Cronin v. JBE Olson Corp.*, 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972) (when plaintiff, driver of bread truck, had collision while speeding and was forced through windshield by bread racks that came forward due to defective hasp, it was held that speeding was foreseeable misuse and such negligence was not defense).

■ An unintended use does not prevent the product from being shown to be defective, if the unintended use was reasonably anticipated by the manufacturer. For example, when a restaurant patron struck the bottom of a catsup bottle with his hand to loosen the cap, causing the bottle to break and injure him, it was held to be the type of misuse the producer could reasonably expect to foresee and guard against, especially when the producer's advertisement showed the bumping of bottles to get the product out of the bottle. *Early-Gary, Inc. v. Walters*, 294 So. 181, 187 (Miss.1974). *See also Ford Motor Co. v. Matthews*, 291 So.2d 169, 175 (Miss.1974) (foreseeable that operator would start tractor having a safety mechanism to prevent starting in gear while standing on ground and manufacturer liable when mechanism was defective and operator was run over); *Horn v. General Motors Corp.*, 17 Cal.3d 359, 131 Cal.Rptr. 78, 84, 551 P.2d 398, 404 (1976) (driving without seat belt is foreseeable misuse of vehicle); *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.*, 33 Colo.App. 99, 517 P.2d 406 (1973) (jury question existed as to whether removal of cotter key was reasonably foreseeable act).

■ Another factor in determining whether a producer may reasonably anticipate or foresee a use put to the product is the environment in which the product will be used. A manufacturer must anticipate the nature of the environment in which the product is to be used and the foreseeable risk attending the product's use in that setting. *Newton v. G. F. Goodman*, 519 F.Supp. 1301, 1306 (N.D.Ind.1981).

■ The third paragraph of Instruction No. 12 instructs the jury that a product is not defective if it fails solely because of misuse. It would not allow the jury to find the product defective, even if the misuse was reasonably foreseeable by the producer. The instruction is therefore incorrect.

■ We also believe that the last sentence of Instruction No. 14 should be clarified when reasonably foreseeable misuse is an issue. The instructions as a whole should be harmonized to eliminate any danger that the jury would find the product nondefective because of misuse by a plaintiff that was reasonably foreseeable by the defendant.

In summary, when misuse of a product occurs, the factfinder must determine whether the misuse was reasonably foreseeable. When the failure of a product occurs only as a result of the product being used in a manner other than that intended by the seller, and if that unintended use is not reasonably foreseeable by the seller, the product is not in a defective condition. The seller may, however, reasonably anticipate uses other than the one for which the product is primarily intended. In such case when the seller reasonably foresees the misuse, the product is in a defective condition despite the misuse. In determining whether or not the seller should have reasonably anticipated the use of the product, the factfinder may take into account: the reasonable use or uses of the product; the ordinary user's awareness that the use of the product in a certain way is dangerous; the likelihood and probable nature of use of the product by persons of limited knowledge; and the normal environment for the use of the product and the foreseeable risk in such environment, as well as any other evidence that may or may not cause the seller to reasonably anticipate such use.

III. *Admissibility of government report.* Plaintiffs contend the trial court erred in holding inadmissible a March 1975 report by the Bureau of Epidemiology of the United States Consumer Product Safety Commission entitled "Hazard Analysis of Carbonated Soft Drink Bottles." They maintain the report is admissible under the public records exception to the hearsay rule approved in *Hunt v. State*, 252 N.W.2d 715 (1977).

In *Hunt* we approved Unif.R.Evid. 803(8), which provides an exception to the hearsay rule for

records, reports, statements, or data compilations in any form of a public office or agency setting forth ... matters observed pursuant to duty imposed by law and as to which there was a duty to

report, or factual findings resulting from an investigation made pursuant to authority granted by law.

We held that the Consumer Price Index, which is prepared by the United States Department of Labor's Bureau of Labor Statistics, is the kind of data compilation that falls within the purview of this hearsay exception. 252 N.W.2d at 722.

As we indicated in *Hunt,* to be admissible under uniform rule 803(8), the record, report, statement, or data compilation must be trustworthy. *See id.; cf.* Fed.R.Evid. 803(8) (government reports constitute exception to hearsay rule "unless the sources of the information or other circumstances indicate lack of trustworthiness"). We noted that the Consumer Price Index is relied on by numerous sources and has a general reputation of trustworthiness. 252 N.W.2d at 722.

■ Conversely, the hazard analysis does not have such reliability. Although it is a collection of materials concerning injuries caused by or resulting from carbonated-soft-drink bottles, the report is based almost exclusively on information from sources outside the Consumer Product Safety Commission. One source, for example, was letters of complaint from consumers, which were generally not verified. Another source was "in-depth" investigations. These, however, usually consisted only of an interview with the victim or a witness and, when possible, a sample of the product was obtained. Furthermore, there were only eighty-six such investigations, and a summarization of the investigations cautioned that "[t]he data are not statistically representative of all the injuries associated with this product."

Injuries included in the hazard analysis were not confined to the type at issue in this case but also included fractures, lacerations, and ingestion of glass. Also, estimates as to the number of injuries resulting from soft-drink bottles were based on projections from a small sample group.

There is no indication that the hazard analysis possesses the indicia of reliability that make the Consumer Price Index an

exception to the hearsay rule under uniform rule 803(8). Without evidence of such reliability, fairness requires an opportunity for cross-examination. Accordingly, we reject plaintiffs' contention that the hazard analysis was admissible under rule 803(8).

■ The trial court also could have held the report inadmissible on an alternative ground. The trial court has discretionary authority to exclude evidence when the probative value thereof is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury. *Kalianov v. Darland,* 252 N.W.2d 732, 736 (Iowa 1977). We will not interfere with the trial court's decision unless it has clearly abused its discretion, to the prejudice of the complaining party. *Id.* Much of the material in the hazard analysis would have been sufficiently misleading and prejudicial to warrant exclusion. We perceive no abuse of discretion on the part of the trial court.

IV. *Conclusion.* Because the trial court incorrectly instructed the jury, as discussed in division II, we reverse the judgment of the trial court and remand for a retrial of plaintiffs' strict liability claims.

REVERSED AND REMANDED.

All Justices concur except CARTER, J., who takes no part.