**Albena RUTHER, Special Administratrix of the Estate of Tyrone Bolden, Deceased, Plaintiff-Appellant,**

v.

**ROBINS ENGINEERING AND CONSTRUCTORS, A DIVISION OF LITTON SYSTEMS, INC., a Delaware Corp., Defendant-Appellee.**

**No. 85–2341.**

United States Court of Appeals, Seventh Circuit.

Argued April 15, 1986.

Decided Sept. 25, 1986.

---

Leonard M. Ring, William J. Jovan, Leslie J. Rosen, Leonard M. Ring and Associates, Chicago, Ill., for plaintiff-appellant.

Arthur A. May, May, Oberfell, Helling & Lorber, South Bend, Ind., for defendant-appellee.

Before CUMMINGS, Chief Judge, BAUER, Circuit Judge, and MAROVITZ, Senior District Judge.[*]

CUMMINGS, Chief Judge.

This diversity complaint was filed by the Special Administratrix of the estate of Tyrone Bolden who sued Robins Engineering and Constructors ("Robins"), a Delaware corporation, for Bolden's wrongful death for "in excess of TEN THOUSAND ($10,000) DOLLARS."[1]

Count I was based on a products liability theory and alleged that Bolden was an employee of Bethlehem Steel Corporation[2] in its Burns Harbor plant in Chesterton, Indiana. According to this Count, Robins designed and produced a vibrating feeder in a truck hopper as part of the bedding plant it constructed for Bethlehem Steel Corporation in Chesterton. Bolden was working near the feeder on May 23, 1979. The feeder was described by plaintiff "as unreasonably dangerous" because its gate was not remotely operable from the base-ment truck hopper, thus causing Bolden to be exposed to a rapid discharge of hot dust from the feeder, resulting in his death on May 24.[3]

Count III repeated the chief allegations of Count I and described Count III as a "wrongful death action" brought pursuant to Indiana Code § 34–1–1–2 of the Wrongful Death Act. Damages in excess of $10,000 were sought in both these Counts.

On July 1, 1985, District Judge Moody granted Robins' Motion for Summary Judgment on the ground that the plant in question "posed an open and obvious danger" and on the additional ground that "Bethlehem's unforeseeable misuse" of the plant was the "efficient intervening cause of Bolden's injuries." As the Supreme Court recently pointed out in *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, ——, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, summary judgment is appropriate if the evidence "is so one-sided that one party [here defendant] must prevail as a matter of law." Our review of the evidence convinces us that this evidence is not "so one-sided" that defendant must prevail at trial. Indeed plaintiff has satisfied the preponderance of evidence standard of proof that governs the denial of summary judgment motions in this kind of case. In another summary judgment case decided the same day, the Court said a "Court of Appeals with its superior knowledge of local law is better suited than we [the Supreme Court] are to make these determinations [adequacy of plaintiff's showing opposing summary judgment and whether such a showing * * would be sufficient to carry plaintiff's burden of proof at trial] in the first instance." *Celotex Corp. v. Catrett*, —— U.S. ——, ——, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265. In accordance with these strictures, it is

---

[*] The Honorable Abraham L. Marovitz, Senior District Judge of the Northern District of Illinois, is sitting by designation.

1. Plaintiff is an Illinois resident. Robins' principal place of business is in California. There were five other defendants, but they are not involved in this appeal.

2. At the oral argument we were informed that plaintiff recovered damages (in an unspecified amount) from Bethlehem because of this accident.

3. Count II did not involve Robins and therefore is not summarized herein.

apparent that the summary judgment for defendant cannot stand.

The facts developed at trial showed that Bethlehem employed Robins to design and construct an Indiana bedding plant. The plant contained a large basement with a vibrating feeder with a truck hopper, various conveyor belts, screening stations, surge bins, a stacker, a reclaimer and several bays. The system was constructed to blend seven or eight materials into a pill for making sinter. At ground level, various materials were dumped through a grating into the hopper in the basement. The vibrating feeder then emptied the materials (usually flue dust and filter cake) onto a conveyor belt that runs beneath the hopper to other sections of the plant where the materials were deposited.

One of the materials employed is dust cake which is composed of flue dust and filter cake. Flue dust and filter cake are by-products from air pollution devices on Bethlehem's chimneys. When flue dust is removed from a blast furnace, it is 500 to 600° Fahrenheit, and when it is placed in the dust catcher it is around 300°. Contrary to Bethlehem's instructions, straight flue dust, instead of a mixture of flue dust and filter cake, was being dumped into the hopper on the evening in question and therefore it was hotter than normal, causing the wires in the vibrating feeder to short out.

At 6:30 p.m. on May 23, 1979, the vibrating feeder was malfunctioning and caused spillage. A bedding plant helper, Gerald Leggett, said when he opened the west door of the truck hopper building to investigate, there was a large amount of dust in the air, causing him to wait for five minutes before proceeding downstairs. He sent word to James Penrod, the front-end payloader operator, to stop dumping materials into the hopper because Leggett saw that the materials were spilling from the truck hopper to the basement floor. Consequently, Leggett shut the feeder down. Subsequently foreman George Tremmel and two electricians, Bolden and Thomas Beckley, entered the basement to deter-

mine why the vibrating feeder was malfunctioning and causing the spillage to occur.

Bolden and Beckley left the basement to check for a malfunction in the control room. Thereafter Bolden and Tremmel, but neither Leggett nor Beckley, returned to the basement but were unable to fix the feeder despite working on it for an hour and a half. Soon thereafter Bolden exited the basement and told other employees that he could not breathe. He was then hospitalized but died the next day. Foreman Tremmel died in the basement.

## OPEN AND OBVIOUS DANGER NOT PRESENT

■ The first ground for the district court's granting summary judgment to Robins was that the basement with the truck hopper represented an open and obvious danger on May 23. As the court found, Bolden entered the basement twice even though he had encountered a large amount of hot dust on opening the basement door. The court concluded that Bolden's claim that the material handling system was unreasonably dangerous was barred by the open and obvious danger of the risk he incurred. The district judge stated, "[a]s a matter of law in Indiana, an open and obvious danger bars an action under the Product Liability Act, § 33–1–1.-5–1, et seq."

As we pointed out in *Estrada v. Schmutz Manufacturing Co., Inc.*, 734 F.2d 1218, 1220 (7th Cir.1984), summary judgment based on an open and obvious danger is proper in Indiana only if "from the uncontested facts no reasonable jury properly instructed in Indiana law could infer that the danger was not open and obvious." We conclude that here a reasonable jury could infer that the danger was not open and obvious, so that summary judgment was improper. Bolden and Tremmel worked for an hour and a half amid the hot flue dust trying to repair the vibrating feeder. Two other Bethlehem employees also worked in the basement that evening. There were no warnings.

As the plaintiff has aptly observed, "[c]ertainly, none [of the four employees] would have been bent on suicide" (Br. 15). Bolden and Beckley had often made electrical checks in the basement while the system was running, so that at the most, Bolden thought that he and Beckley should merely "wait a few minutes" before entering the basement and breathing the hot dust there. Since from material uncontested evidence a "reasonable jury properly instructed in Indiana law could infer that the danger was not open and obvious," summary judgment was improper. *Estrada*, 734 F.2d at 1220.

## NO UNFORESEEABLE MISUSE OF THE SINTER PLANT BY BETHLEHEM

■ Some evidence in the case tends to show that Bethlehem was using a proper mix of flue dust and filter cake on the crucial date but that a malfunction in the system caused overheated straight flue dust to permeate the basement. If that were so, then there was no misuse of the system by Bethlehem.

■ But assuming that the employees of Bethlehem, rather than mechanical problems, permitted overheated flue dust to reach the basement hopper, then there was a Bethlehem misuse. The district court's second reason for granting summary judgment was that Bethlehem's misuse of the plant was unforeseeable by Robins and "an efficient intervening cause of Bolden's injuries." Such a defense is contained in Indiana Code § 33–1–1.5–4. The court pointed out that in the companion case of *Tremmel v. Robins*, (N.D.Ind.) No. H 80–237, Magistrate Rodovich stated that this "system was not designed to handle pure hot flue dust which flowed like water, [so that] it was a misuse of the system to place two loads of pure flue dust in it" (Order of Nov. 14, 1985). The appeal from the magistrate to this Court was dismissed on February 16, 1984. Plaintiff contends that a question of fact exists here as to whether Bethlehem's dumping of the pure hot flue dust into the bedding system without filter cake was a foreseeable misuse which Robins should have anticipated in its design and about which it should have warned Bethlehem's employees. Unlike *Tremmel*, on this record we conclude that it was for a jury to determine whether Robins should have foreseen that Bethlehem might use pure hot flue dust in the hopper, particularly since two employees of Bethlehem had been doing so to make their work easier. Here Robins failed to design its product to accommodate the hot flue dust by preventing it from entering the hopper basement alone and failed to warn Bethlehem employees of the limitations of the system. Since defendant knew of Bethlehem's stockpile of flue dust and of its high temperature after leaving the blast furnace and did not design the system to prevent such a danger, a jury could find that Robins should have foreseen the possibility of hot flue dust being fed into the hopper without filter cake. Because a jury could find that Robins should have reasonably foreseen Bethlehem's misuse in not adding filter cake to the material before sending it to the hopper, summary judgment on the ground of unforeseeability was improper.

In our view, the controlling precedent under Indiana law is *Newton v. G.F. Goodman*, 519 F.Supp. 1301 (N.D.Ind.1981), where airborne dust activated a rubber-cutting machine, causing plaintiff to lose a thumb and two fingers. There the court stated:

A manufacturer is charged with a duty to anticipate what the environment will be like in which the product is to be used and what the foreseeable risks of such use are. *Huff v. White Motor Corp.*, 565 F.2d 104 (7th Cir.1979). The questions of feasibility of safety devices and foreseeability of harm are questions for the triers of fact. *Bemis Co., Inc. v. Rubush, Inc.*, Ind.App., 401 N.E.2d 48 (1980); *Gilbert v. Stone City Construction Company, Inc.*, Ind.App., 357 N.E.2d 738 (1976).

Plaintiff was not required to prove that the defect or defects attributable to Defendant were the sole cause of the

injury; it is sufficient if the defect or defects, combined with other reasonable or foreseeable intervening or independent forces, constituted a proximate cause of the injuries. "Proximate cause is generally a question for the trier of fact." *Ortho, supra* [388 N.E.2d] at p. 555.[4]

519 F.Supp. 1301, 1306.

Here too there was enough in the record to make foreseeability a jury question.

## TRUCK HOPPER BASEMENT AND SYSTEM ARE PRODUCTS UNDER INDIANA PRODUCTS LIABILITY STATUTE

■ The trial court ruled in plaintiff's favor in holding that the truck hopper basement and system were "products" within the Indiana products liability statute. Product is defined therein as "any item or good that is personalty at the time it is conveyed by the seller to another party. It does not apply to a transaction that by its nature, involves wholly or predominantly the sale of a service rather than a product." Indiana Code § 33–1–1.5–2.

The decision that the basement area and system in question are "products" is supported by all decisions dealing with this aspect of Indiana law. See, *e.g., Lantis v. Astec Ind., Inc.,* 648 F.2d 1118 (7th Cir. 1981); *Grain Dealers Mut. Ins. Co. v. Chief Ind.,* 612 F.Supp. 1179 (N.D.Ind. 1985); *Shanks v. A.F.E. Ind., Inc.,* 275 Ind. 241, 416 N.E.2d 833 (Ind.Sup.Ct.1981); *Coffman v. Austgen's Electric, Inc.,* 437 N.E.2d 1003 (Ind.App.1982). Defendant's only authorities do not involve Indiana law and are unavailing in this diversity action. Consequently Judge Moody correctly concluded that this part of the sinter plant was a "product," so that defendant was not entitled to summary judgment on its argument to the contrary.

Defendant has not shown that it would prevail before a jury and plaintiff has presented enough evidence to show that a reasonable jury might find in her favor on both issues that were the only support found below for the summary judgment. Therefore the summary judgment for defendant is reversed and the case is remanded for a new trial.

---

4. *Ortho Pharmaceutical Corp. v. Chapman,* 180 Ind.App. 33, 388 N.E.2d 541 (Ind.Sup.Ct.1979).